Russell W. Borrowdale, Appellee, v. Benjamin Sugarman, Trading as Consolidated Photo Engravers Equipment Company and Consolidated Photo Engravers Equipment Company, an Illinois Corporation, Appellants.

Gen. No. 45,687.

Opinion filed June 18, 1952. Rehearing denied and opinion modified July 16, 1952. Released for publication July 17, 1952.

ALBERT E. JENNER, JR., PHILIP W. TONE, and WILLIAM B. DAVENPORT, all of Chicago, for appellant; JOHNSTON, THOMPSON, RAYMOND & MAYER, all of Chicago, of counsel.

HARRY G. FINS, and THEODORE S. PABST, JR., both of Chicago, for appellee; PABST & KUCHINSKAS, of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Defendants appeal from a judgment entered on the verdict of a jury in an action to recover damages for breach of an alleged oral contract. Defendants' motions for judgment notwithstanding the verdict and for a new trial were overruled and judgment entered accordingly.

Plaintiff filed a second amended complaint consisting of two counts. The first count alleges that on April 1, 1945 plaintiff and defendant Sugarman entered into an oral contract which provided that plaintiff would build and produce "as soon as possible" a commercial camera for the printing industry known as the "consolidated 24″ precision camera" with attachments; manage defendants' organization so that it could produce one hundred such cameras for sale within one year, if defendant could furnish the necessary

391

capital; that defendant would furnish plans and specifications for such camera; and that in consideration of these services defendant would pay plaintiff the sum of $25,000.

Count 1 also alleged that after plaintiff had built the "consolidated 24″ precision camera" and the production line for building one hundred of such cameras for sale, the parties entered into another oral contract about August 1, 1945, which provided that plaintiff would continue to supervise the production of the "consolidated 24″ precision camera" disregarding the goal of one hundred cameras annually; that plaintiff would build and produce another commercial camera for the printing industry known as the "consolidated 24″ standard camera" with attachments, and organize defendant's facilities to build twenty-five of this model for sale; that defendant would furnish plans and specifications; and that defendants would pay to plaintiff for such services an additional $25,000.

Count 1 further alleged that on November 1, 1945, plaintiff and defendant Sugarman entered into another oral contract which provided in substance that plaintiff would "build and produce" two additional commercial cameras for the printing industry known as the "consolidated 31″ precision camera" and "consolidated 31″ standard camera" with attachments, for which plaintiff was to receive the sum of $25,000 for each model; that plaintiff performed all of the terms and conditions of the "agreements" by building and producing the four models of cameras and "gearing" defendants' organization to build them.

In the second count of the second amended complaint plaintiff claims compensation for services rendered as manager of defendants' business; for moneys advanced to defendants for operating capital; for obtaining credit for defendants; for securing new quarters and remodeling them; for moving defendants' office

and experimental laboratory; for developing and producing for sale the four models of industrial cameras described in the first count; for building a competent organization of highly skilled craftsmen to produce the cameras; for setting up experimental shops; and for designing, engineering and building all types of other photographic equipment and etching machines. Plaintiff says that the fair and reasonable value of the foregoing services was $100,000.

Defendants answered denying that they entered into the oral agreements with the plaintiff as alleged in the first count of the second amended complaint and aver that plaintiff was paid an agreed weekly salary as shop superintendent during the term of his employment.

As to the second count defendants deny that the services rendered by plaintiff were of a value in excess of the amount paid him as a weekly salary.

In 1942 defendant Sugarman acquired a small engraving establishment. Shortly thereafter he also engaged in the business of buying, rebuilding and selling small cameras and equipment. Some time in August 1944 Sugarman began the development of a large commercial camera used primarily in the printing business. He employed one Max Sussin, an experienced designer of commercial cameras. The first camera produced by Sussin, called the "consolidated precision 24" camera," weighs about 2400 pounds, is approximately 16 feet long and contains about 800 parts. Early in April 1945 plaintiff placed an advertisement in a newspaper seeking employment. Sugarman responded to this advertisement and plaintiff came to his place of business where they discussed the terms of plaintiff's employment. Plaintiff and Sugarman testified to diametrically opposite versions. During these conversations between plaintiff and Sugarman relating to the terms of plaintiff's employment no one else was present. It is uncontroverted that when

plaintiff first met Sugarman, plaintiff had had no experience in the design or manufacture of cameras.

There is testimony tending to prove that when plaintiff was employed by Sugarman in April 1945 the design and patterns of the ''consolidated precision 24″ camera'' were substantially completed, and that Sussin in designing this camera had invented certain improvements which were later patented by him.

Afterwards, during the period of plaintiff's employment, three other large commercial cameras were developed and produced. According to plaintiff's testimony he was discharged by Sugarman without just cause on February 17, 1947.

It is undisputed that plaintiff received $100 weekly from April 5, 1945 to May 3, 1945; $125 weekly from May 3, 1945 to November 8, 1945; $135 weekly from November 8, 1945 to June 1946; and $165 weekly from June 20, 1946 until the termination of his employment; and that the federal income taxes and social security taxes were deducted from each weekly check.

The cause was submitted to the jury on both counts. The jury were also given a special interrogatory which read: ''Was plaintiff hired by defendant at a weekly salary and for no other remuneration?'' This interrogatory was answered in the negative. The jury were instructed that any verdict for plaintiff had to be on one or the other of the two counts of the second amended complaint and could not be on both. The jury returned a general verdict for plaintiff and assessed the damages at $86,415. The trial judge stated that, ''the jury, apparently found on the so-called oral contract for a certain specified amount that plaintiff claimed. The verdict agreed with that claim and without any question it was not based on a *quantum meruit*.''

 In their brief, and on the oral argument before this court, plaintiff's counsel abandoned the second

count of the second amended complaint. The rule is well established that there cannot be both an express and implied agreement in reference to the same matter. See *Deitchman v. Korach,* 330 Ill. App. 365. In the early case of *Walker v. Brown,* 28 Ill. 378, our Supreme Court said, at page 383:

"As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time. This is an axiomatic truth. It is only when parties do not expressly agree, that the law interposes and raises a promise."

The record consists of more than 1200 pages and numerous exhibits. A considerable portion of the testimony and exhibits bears on the second count. From a careful examination of the record we are of the opinion that there is no competent evidence tending to prove the reasonable value of the services plaintiff claims to have rendered as alleged in the second count.

The record shows that at the close of plaintiff's case, out of the presence of the jury, the defendant made an oral motion for a directed verdict on the ground that the two counts in plaintiff's second amended complaint were inconsistent, and that plaintiff was required to elect the one on which he would proceed. At the close of all the evidence defendants filed a written motion for a directed verdict. Both motions were denied.

Plaintiff argues that since defendants offered no written instruction on any particular count of the second amended complaint they cannot complain. In support of his position plaintiff relies on *Kennedy v. Aetna Life Ins. Co.,* 242 Ill. 396. In the later case of *Greene v. Noonan,* 372 Ill. 286, a personal injury action in which the defendant was charged with willful and wanton conduct, it appears that although no evidence was offered to support this charge the cause was sub-

mitted to the jury with the willful and wanton count in the declaration. The question presented was whether the trial court was bound to consider a motion for a directed verdict which was not in writing and where there was not tendered with it a form of instruction to the jury. In that case, as here, the record did show that a motion for a directed verdict was made. The court held that it was the trial court's duty, on motion, to withdraw the charge from the jury. In the recent case of *Goldschmidt v. Chicago Transit Authority,* 335 Ill. App. 461, which also involved a personal injury action, willful and wanton negligence was charged in the second count. We said, at page 468:

"Whether the manner in which the plaintiff brought the matter to the attention of the trial judge during a conference in chambers prior to the submission of the case to the jury was in the form of a motion, request, or a suggestion, the essential requisite was that the matter be consciously before the trial judge so that he would know that he was asked to make a ruling thereon."

 We are not unmindful of the fact that the present case is not a personal injury action involving the charge of willful and wanton conduct, but in our opinion the principle announced in the cases last cited is applicable in the instant case, where the two counts of plaintiff's second amended complaint are mutually exclusive.

Testimony introduced by plaintiff in support of the allegations of the second count tended to prove that plaintiff made personal loans to Sugarman; that plaintiff secured credit for Sugarman and his company; and that plaintiff performed other services outside of and beyond the scope of his employment as manager or superintendent of defendants' business. None of this evidence tended to prove the allegations of the first count.

■ Since count 2 went to the jury and the testimony was material only to that count, defendants were at a disadvantage to complain of its admissibility until the close of the plaintiff's case, when defendants in their motion for a directed verdict pointed out to the trial judge the inconsistency of the two counts and the prejudicial effect of the testimony bearing on count 2. This evidence being irrelevant and incompetent under count one it should not have been considered by the jury and the jury should have been instructed to disregard it. There can be little doubt that all of this testimony was bound to influence and prejudice the jury in their consideration of the first count.

The refusal of the trial court to withdraw from the jury, on defendants' motion, the consideration of the second count impels us to reverse the judgment and remand the cause for a new trial.

The record also shows that defendants sought to have admitted physically in evidence the plaintiff's verified original and first amended complaints, for the purpose of impeachment. The trial court permitted defendants' counsel to read parts of these pleadings to the jury and to interrogate plaintiff on the parts so read. After both sides rested the trial court decided to admit the original complaint. The original and first amended complaints were filed about two months after plaintiff left defendants' employ. The original complaint alleged that plaintiff was employed by Sugarman as a ''mechanical and industrial engineer'' to operate and develop defendants' business for a period of five years commencing April 1st at an annual salary of $7,500 which was to be increased to $10,000 annually when ''50 photo engraving cameras'' then being designed were manufactured and sold, and that when an additional 50 cameras were manufactured and sold by defendants plaintiff was to receive the further sum of $5,000.

397

The first amended complaint alleged that Sugarman agreed to retain plaintiff for a period of five years commencing April 1, 1945, at an annual salary of $7,500 until defendants "would get into the production and sale" certain photo engravers' equipment and cameras; that plaintiff's salary was to be increased to $10,000 annually "when the number of photo engravers' cameras reached 50 units a year," and $15,000 annually when 100 units were produced each year, and that "when defendants' production of said units reached 150 or more cameras per year" plaintiff's salary was to be increased to $20,000 annually.

■ The second amended complaint, which was also verified, was filed more than three years after the filing of the original complaint and was framed on a different theory from and inconsistent with the allegations of the former pleadings. The first count of the second amended complaint is based on a series of alleged oral agreements under which plaintiff claims compensation in the sum of $25,000 for the development and production of each of the four models of commercial cameras. Because of this inconsistency between the second amended complaint and the former pleadings they were admissible for the purpose of impeachment. See *Illinois Central R. Co. v. Wade,* 206 Ill. 523. In the view which we take of this case it is unnecessary to consider the other points raised.

For the reasons given, the judgment is reversed and the cause is remanded with directions to enter judgment in favor of the defendants as to count two and for a new trial on the remaining count.

*Reversed and remanded for new trial.*

KILEY, P. J. and FEINBERG, J., concur.