THE CITY OF MARSHALL, Plaintiff-Appellant, v. THE CITY OF CASEY et al., Defendants-Appellees.

Fourth District   No. 4—88—0550

Opinion filed January 9, 1989.—Rehearing denied January 31, 1989.

Thomas J. Logue, of Glenn & Logue, of Mattoon, for appellant.

John P. Ewart and John L. Barger, both of Craig & Craig, of Mattoon, for appellee City of Martinsville.

Tracy W. Resch and Kim L. Spaits, both of Parker, Siemer, Austin, Resch & Resch, of Effingham, for other appellee.

JUSTICE SPITZ delivered the opinion of the court:
Plaintiff City of Marshall appeals from the order of the circuit court of Clark County dismissing its three-count amended complaint against the defendants, City of Casey and City of Martinsville. Plain-

tiff's amended complaint involves allegations centered around three sets of written contracts.

On June 11, 1964, the parties hereto entered into a written contract with Midwestern Gas Transmission Co. (hereinafter Midwestern) whereby the three cities would be supplied natural gas. This contract was superseded by a new contract on May 24, 1983, and then again by yet another contract entered into on April 15, 1985. Under the terms of these contracts, the three cities, collectively referred to as "Buyer," are to receive from Midwestern the quantities of gas specified and to pay Midwestern at the rate calculated pursuant to the terms of the contract. For clarity, this first set of contracts will be referred to as the "Midwestern agreement."

Prior to contracting with Midwestern, Casey and Marshall entered into a second contract called a "Transportation Agreement," which was dated February 5, 1962. By this transportation agreement, Marshall agreed to transfer and deliver to Casey all the natural gas requirements of Casey and Marshall, not to exceed the combined total peak day allocations approved by the Federal Power Commission (FPC). The point of delivery was a metering station constructed and maintained by Marshall. Casey agreed to pay one cent per thousand cubic feet (Mcf) as recorded on the meter identified as the "Casey meter." Marshall was to bill this charge monthly.

This transportation agreement was amended January 1, 1974. The amendment recites that Casey and Marshall had "fully complied with all of the terms, conditions and provisions" of the 1962 agreement, but they decided to amend that earlier agreement in order to more nearly equalize between the parties the costs and expenses being incurred in connection with the transportation of natural gas. The amendment raised the fee Casey was to pay Marshall to 3.3¢ per Mcf.

A third contract was entered into by the three cities with regard to the purchase, distribution, and payment for natural gas supplied by Midwestern. This contract, dated June 8, 1964, set forth the procedure to be used to determine the amount each city was to pay Midwestern for the gas supplied. At the end of each billing period, representatives of each city were to jointly read the respective meters, and it is from these readings that the amount of gas used by each city during each billing period is to be determined. In order to determine the amount of gas delivered to Marshall, the agreement provided that the total volume of gas delivered by Midwestern, as measured at the "Marshall meter," was to be reduced by the amount recorded on the Casey meter. The amount delivered to Casey was to be established by the volume recorded on the Casey meter, less the volume shown on

the "Martinsville meter" (installed by Casey near Martinsville). Deliveries to Martinsville are measured by the volume recorded on the Martinsville meter. Midwestern was to bill Marshall, with a copy going to Casey and Martinsville as well. Casey and Martinsville were then to deliver payment to Marshall which was, in turn, to remit all their payments to Midwestern.

With regard to the instant litigation, Marshall considers paragraph 4 of the June 8, 1964, agreement to be significant. Paragraph 4 states:

"4. The amount which each city shall owe to Midwestern for each billing period shall be determined by applying the rates, as specified in the contract between the municipalities and Midwestern, and as approved by the Federal Power Commission, to the meter reading for such billing period."

Marshall initially filed a complaint on February 28, 1986, consisting of two counts against Casey only. Subsequently, Marshall filed an amended complaint on April 9, 1987, containing two counts. Count I was directed against Casey and Martinsville. Count II was directed against the City of Casey alone. Marshall later added count III, directed against Casey and Martinsville.

Under count I of the amended complaint, Marshall sought recovery from the defendants under an implied, equitable contribution theory based on the Midwestern agreements. Count II asks the court to require Casey to pay Marshall $3,863.74 for unpaid transportation costs occasioned by plaintiff's failure to utilize a factor of supercompressibility in measuring the amount of gas transported between March 1, 1976, and April 30, 1985. Count III seeks recovery for breach of the June 8, 1964, written contract because, according to Marshall: (1) paragraph 4 of said contract requires the rates to be those specified in the Midwestern agreement, as approved by the FPC and as applied to the meter readings; (2) article IV of the Midwestern agreement provides that the legally effective rate shall be that contained in Midwestern's rate schedule as filed with the FPC, together with the general terms and conditions applicable thereto; and (3) volume one, general terms and conditions, paragraph III, subparagraph 2, of the Federal Energy Regulatory Commission Gas Tariffs provides for a supercompressibility factor to be applied in the determination of the volume and value of gas delivered by the seller.

In addition to the complaint, the record contains the plaintiff's answer to a request for admission of facts. Plaintiff admits: (1) the "Casey meter," was purchased and installed by plaintiff; (2) the "Casey meter" is owned by plaintiff and has been maintained by

plaintiff at all times; (3) the volume of natural gas delivered to Casey and Martinsville has been recorded on the "Casey meter," which is read by plaintiff; and (4) the City of Casey has remitted payment in each billing period for natural gas deliveries made to it as contemporaneously measured by the data recorded on the "Casey meter."

On the motions of both defendants, made pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619), the trial court dismissed the complaint with prejudice because all three counts are barred by the respective statute of limitations and count I fails to state a cause of action for equitable contribution based on the underlying relationship of the parties as governed by the written contracts. In this appeal, the first question which must be addressed is whether the facts alleged in the three counts of plaintiff's amended complaint state a cause of action against defendants.

■ While the trial court's order dismissed only count I for failing to state a cause of action, the sufficiency of each of the counts was attacked by the defendants in their motions, and even though the trial court did not rely on this ground to dismiss counts II and III, a reviewing court may consider whether the judgment is justified for any reason or ground appearing of record. (*Farmers State Bank v. Webel* (1983), 113 Ill. App. 3d 87, 446 N.E.2d 525.) In considering motions to dismiss pursuant to section 2—615, all well-pleaded facts in the complaint are taken as true and the only question is whether the complaint is legally sufficient. *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171.

■ Count I of plaintiff's amended complaint attempts to state a cause of action based on an implied contract of contribution. It is basic law that contracts may be expressed or implied. Express contracts are those agreements in which the parties openly and fully disclose the terms of the contract. (*Turner v. Owen* (1905), 122 Ill. App. 501.) Implied contracts are obligations imposed on the parties by the law based on the acts and conduct of the parties. *Bull v. Mitchell* (1983), 114 Ill. App. 3d 177, 448 N.E.2d 1016.

> "The basis for recovery under the doctrine variously referred to as quasi contract, contract implied in law, or quantum meruit is unjust enrichment, that is, where the defendant receives a benefit from the plaintiff which would be unjust for the defendant to retain without paying for it. There need not be any wrong-doing on the part of the enriched party, nor need there be a fiduciary duty, before a recovery can be had on an unjust enrichment theory. A person is not entitled to compensa-

tion on the ground of unjust enrichment if he received from the other that which it was agreed between them that the other should give in return." 12 Ill. L. & Prac. *Contracts* §6, at 251-52 (1983).

See also *Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 477 N.E.2d 1249.

■■ Where one debtor on a contract has paid more than a proportionate share, that person may have an action against the other coobligor on an implied contract of indemnity or contribution. (*Harris v. Buder* (1945), 326 Ill. App. 471, 62 N.E.2d 131; *Gillham v. Troeckler* (1940), 304 Ill. App. 596, 26 N.E.2d 413.) The distinction between contribution and indemnity is that contribution asks another to share a debt, while indemnity would require another to pay it all. See *Heinrich v. Peabody International Corp.* (1984), 99 Ill. 2d 344, 459 N.E.2d 935.

■■ Although plaintiff seeks to bring an action on an implied contract for contribution in this case, the plaintiff is not legally permitted to do so. The reason is that an implied contract cannot exist when an express contract exists between the same parties concerning the same subject matter. (*Borrowdale v. Sugarman* (1952), 347 Ill. App. 390, 107 N.E.2d 45.) The implied contract is only created by law where no agreement exists between the parties. In *Walker v. Brown* (1862), 28 Ill. 378, 383, the Illinois Supreme Court stated:

"As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time. This is an axiomatic truth. It is only when parties do not expressly agree, that the law interposes and raises a promise."

Plaintiff attempts to avoid the effect of this rule of law by suggesting that the contracts between the parties do not precisely govern the subject matter of contribution. However, if contribution relates to the relative obligation of the parties in the underlying debt, then logic dictates that the June 8, 1984, agreement between the cities is an express contract for contribution since it sets forth the methods by which the parties are to determine the amount each owes to Midwestern. Therefore, clearly, the dismissal of count I for failing to state a cause of action is proper.

■■ Counts II and III of plaintiff's amended complaint involve the interpretation of express, written contracts. (See *Globe Brewing Co. v. Simon* (1907), 132 Ill. App. 198.) Whenever a court is construing a written contract, the court will interpret the contract so as to give ef-

fect to the parties' intentions. *Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 443 N.E.2d 36.

In *Pasulka v. Koob* (1988), 170 Ill. App. 3d 191, 202, 524 N.E.2d 1227, 1234, the court stated:

> "The interpretation of an unambiguous written contract is a question of law for the trial court to determine. Likewise, the determination of whether an ambiguity exists is also a question of law. (*Nerone v. Boehler* (1976), 34 Ill. App. 3d 888, 340 N.E.2d 534.) Simply because the parties cannot agree on the meaning of a contract does not mean it is ambiguous. (*Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 436 N.E.2d 663.)"

Moreover:

> "Where the terms of a written agreement are in any respect ambiguous, uncertain, or doubtful, and the parties have by their own acts and conduct placed a practical construction on the provisions of the contract, evidence of their acts or conduct is admissible to enable the court to determine the intention of the parties at the time the contract was made, and it makes no difference whether such acts are contemporaneous or subsequent.
>
> Our courts have stated that the reason underlying this rule is manifest. It is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract, and a practical construction placed by the parties upon the contract is the best evidence of their intention. Courts have a right to assume that the parties know best what they meant, and, if, in reducing their agreement to writing, words or terms have been used that render the contract ambiguous or uncertain, the construction by the parties thereto, as shown by their acts thereunder, cannot help but be of value in ascertaining the true intent and meaning of such contract.
>
> The practical construction by the parties of prior similar contracts may be shown, but the construction of a prior contract is not admissible for the purpose of construing a subsequent dissimilar contract." 12A Ill. L. & Prac. *Contracts* §262, at 104-05 (1983).

Generally, the parties to a contract are expected to perform according to its terms, and the failure of one party to so perform could form the basis for a cause of action by the other party, seeking damages for injuries incurred as a result of the breach of the contract.

(See *Premier Electrical Construction Co. v. City of Chicago* (1987), 159 Ill. App. 3d 98, 512 N.E.2d 44, *appeal denied* (1987), 117 Ill. 2d 553, 517 N.E.2d 1095.) In order for plaintiff to recover, defendants must have breached an implied or express contract.

■ Count II is an action against Casey based on the February 5, 1962, Transportation Agreement, as amended on January 1, 1974. Basically that contract states Marshall shall transport gas and Casey will pay 1¢ per Mcf "as recorded by the Casey meter" for all gas delivered. By the January 1, 1974, amendment this price was raised to 3.3¢ per Mcf "as recorded by the Casey meter." Nowhere does the complaint allege Casey failed to pay those amounts charged. Instead it alleges Marshall "failed to take into account the factor of supercompressibility" from March 1, 1976, to April 30, 1985, and therefore Casey received 117,981.29 Mcf more natural gas for which Casey never paid. Therefore, Marshall claims Casey owes $3,863.73.

But the contract does not contemplate the application of a supercompressibility factor. Supercompressibility is a factor utilized in the calculation of volume and value of gas delivered. Here, the transportation rate and method of calculation is already specific. Furthermore, unlike the June 8, 1964, agreement between the cities, no reference is made in the transportation agreement, or its later amendment, to the rates of Midwestern or the method of calculating rates under the general terms and conditions of the FPC. These transportation contracts specify the amount charged will be a specific rate applied to a volume discerned by a reading of the meter. Nothing more. If there is any ambiguity, the practice of the parties since 1964 has clarified it.

Count III, against Casey and Martinsville, involves allegations with a greater potential for ambiguity than does count II. As stated earlier, count III seeks recovery for breach of the June 8, 1964, written contract based on the combined readings of: (1) paragraph 4 of said contract; (2) article IV of the Midwestern agreement; and (3) volume one, general terms and conditions, paragraph III, subparagraph 2, of the Federal Energy Regulatory Commission Gas Tariffs. However, the construction of the contracts by the parties as shown by their conduct clearly indicates there was never any intention of applying a supercompressibility factor to adjust the bills as between the cities. The parties simply intended to read the meters, apply the rate charged by Midwestern, and thereby calculate the respective amounts owed. The supercompressibility factor was a factor Midwestern could use to calculate its rates. Absolutely nothing is said about Marshall further applying the factor to adjust the bills sent to the parties by Midwestern. And if it was Marshall's responsibility to adjust the

amounts by applying the factor, then what conduct of defendants is alleged which can be said to be a breach of contract? Counts II and III should also have been dismissed for failure to state a cause of action.

■ Furthermore, this is the reason the parties have such a difficult time determining when the statute of limitations is to begin to run. The statute of limitations must begin to run from the date of the breach in a contract action. If there is no breach, the statute of limitations never begins to run.

In this case, there has been no breach alleged. The complaint fails to allege a duty to plaintiff which defendants failed to meet. Therefore, it is unnecessary to consider whether any of the counts are barred by the appropriate statute of limitations.

For the foregoing reasons, the judgment of the circuit court of Clark County is affirmed.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.