LORNA CAMPBELL *et al.*, Plaintiffs-Appellants, v. A.C. EQUIPMENT SERVICES CORPORATION, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 4—92—0456

Opinion filed March 18, 1993.

Paul Brown, of Brown, Hay & Stephens, of Springfield, and Michael, Best & Friedrich, of Madison, Wisconsin (James Troupis, of counsel), for appellees A.C. Equipment Services Corporation, Inc., and Robert Alemi.

James K. Zerkle, Corporation Counsel, of Springfield (Gary S. Rapaport, Assistant Corporation Counsel, of counsel), for appellees City of Springfield, John Davis, Brian Fitzgerald, and Thomas R. Bee.

JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiffs, Lorna Campbell, Dan Duback, Cory Eigenmann, Stephen Jagosh, and Earl Ferguson, appeal from an order of the circuit court of Sangamon County dismissing their third-amended complaint against defendants A.C. Equipment Services Corporation, Inc. (A.C. Equipment), Robert Alemi, the City of Springfield (Springfield), John Davis, Brian Fitzgerald, and Thomas R. Bee. Alemi was an employee of A.C. Equipment, and Davis, Fitzgerald, and Bee were employees of Springfield. Plaintiffs' employer, Turbine Generator Maintenance, Inc. (TGM), was originally named a defendant, but was not so named as a party in the third-amended complaint.

The issues raised in this appeal are (1) whether any or all of the counts alleging causes of action against A.C. Equipment and Alemi in this case are barred by the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*); (2) whether any or all of the counts alleging causes of action against Springfield and its employees in this cause are barred by the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*); and (3) whether any of the counts in plaintiffs' third-amended complaint allege causes of action for battery, intentional infliction of emotional distress, negligent infliction of emotional distress, or wilful and wanton misconduct. Because we affirm based on a finding that none of the counts alleged adequately plead a cause of action, no discussion is necessary with regard to the remaining two issues.

In the third-amended complaint, each of the plaintiffs alleged four counts against defendants. The following allegations were included in the third-amended complaint.

The plaintiffs, all employees of TGM, alleged they were employed by TGM to perform work for A.C. Equipment and Springfield's City Water, Light and Power Division at an electricity generating station known as Lakeside Two. A.C. Equipment, a Wisconsin corporation licensed to do business in Illinois, manufactures turbine generating equipment, and some of that equipment was in use at Lakeside Two. When the equipment is maintained, repaired, or "torn down," employees of A.C. Equipment oversee the work to ensure it is performed in accordance with standards and specifications. The overseers perform broad and varied duties including "receiving readings from

workers." In the spring of 1989, A.C. Equipment and Springfield scheduled maintenance on the turbines at Lakeside Two. TGM was contracted to be a labor broker and to hire the workers to perform the repairs on the turbines.

Defendants Davis and Fitzgerald were project manager supervisors employed by Springfield, and Bee, also a Springfield employee, was a supervisor in charge of maintenance projects at Lakeside Two. Defendant Alemi was the employee of A.C. Equipment who was overseeing the turbine maintenance project at Lakeside Two. At a pre-job meeting, Davis, Fitzgerald, Bee and Alemi discussed the fact that asbestos insulation was present on and around the turbines, but decided not to have the asbestos professionally removed because that would significantly delay the project. On April 24, 1989, and subsequent thereto, asbestos samplings indicated that significant asbestos was on and around the turbines on which plaintiffs were working. Purchase and repair records maintained at Lakeside Two indicated the types of insulation previously removed during maintenance projects and the types of new insulation used to replace that which had been removed. It was therefore alleged that the defendants knew the plaintiffs were working on and around machinery containing significant amounts of asbestos insulation.

Plaintiffs' duties involved alignment and maintenance of the turbines. This work was performed in areas where pipes and other structures were insulated with insulation containing significant amounts of asbestos. The insulating material was in a deteriorated condition, causing extensive amounts of dust. Plaintiffs were often coated with white dust and breathed in the white dust, some of which contained asbestos insulation. It was alleged asbestos, a known carcinogen, may cause asbestosis, progressive fibrosis, mesothelioma, cancer of the pleural lining or of the peritoneum, lung cancer, or other serious or fatal conditions. Plaintiffs worked without protective equipment and were unaware the white dust contained asbestos.

Plaintiffs allege four causes of action against defendants. In the battery counts, it was alleged that the defendants intentionally caused plaintiffs to work in this environment and the contact with the dust was not consented to by plaintiffs since they were unaware it contained asbestos. In the intentional infliction of emotional distress counts, it was alleged plaintiffs were caused severe emotional distress and mental anguish in that they now fear for their health and safety and the health and safety of their families as a result of secondary exposure. It is further alleged that the asbestos exposure unreasonably interfered with plaintiffs' enjoyment of life. In the counts alleging

negligent infliction of emotional distress, defendants' alleged negligence was based on allegations of (1) negligent and careless supervision of the repair and maintenance, thereby permitting exposure to toxic and hazardous substances; (2) failing to warn plaintiffs of the exposure; (3) failing to provide protective equipment; (4) permitting plaintiffs to conduct dangerous work; and (5) failing to stop the work to prevent exposure. In the fourth theory of liability, plaintiffs alleged defendants' misconduct was wilful and wanton, being a conscious and reckless disregard of plaintiffs' health, safety, and welfare by permitting plaintiffs to work in an area in which they would be exposed to significant amounts of asbestos fibers. The damages sought in all counts were for medical expenses incurred and ongoing medical evaluations. The question of the sufficiency of damages as would support the causes of action in this case is not discussed herein, and this disposition should not be construed as recognizing a cause of action to recover expenses for medical monitoring without a current physical injury being present.

We deem the portions of the motions filed by defendants which challenge the sufficiency of the complaint to allege the various causes of action to have been filed pursuant to section 2—615 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). The courts have explained the purpose of section 2—615 motions to dismiss. (*Rowan v. Novotny* (1987), 157 Ill. App. 3d 691, 693-94, 510 N.E.2d 1111, 1112-13; *Toys "R" Us, Inc. v. Adelman* (1991), 215 Ill. App. 3d 561, 564, 574 N.E.2d 1328, 1330.) In considering such motions, all well-pleaded facts alleged in the complaint are taken as true, and allegations which are merely conclusions, unsupported by allegations of specific facts, are not deemed admitted. (*Toys "R" Us*, 215 Ill. App. 3d at 564, 574 N.E.2d at 1330; *City of Marshall v. City of Casey* (1989), 177 Ill. App. 3d 1065, 1069, 532 N.E.2d 1121, 1123.) In considering section 2—615 motions to dismiss, the general question to be considered is whether the complaint is legally sufficient, meaning whether it appears that no set of facts may be proved which would entitle a plaintiff to recover from a defendant. (*Toys "R" Us*, 215 Ill. App. 3d at 564, 574 N.E.2d at 1330; *City of Marshall*, 177 Ill. App. 3d at 1069, 532 N.E.2d at 1123.) In making this determination, the allegations of the complaint are to be interpreted in the light most favorable to plaintiffs. (*Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 9.) On appeal, in addition to considering the arguments of counsel, this court may consider any reason or ground justifying the judgment even though the trial court did not rely on that reason or

ground. *City of Marshall*, 177 Ill. App. 3d at 1069, 532 N.E.2d at 1123.

In proceeding to analyze this case, we must disassociate ourselves somewhat from the fact that it involves allegations of exposure to asbestos, which is currently a subject of intense public interest. The deficiencies in the subject third-amended complaint which are relied on by this court to affirm are rather basic and are not peculiar to asbestos-exposure cases. In light of this caveat, we proceed to discuss whether any of the counts in plaintiffs' third-amended complaint allege causes of action for battery, intentional infliction of emotional distress, negligent infliction of emotional distress, or wilful and wanton misconduct.

█ The first cause of action to be considered is battery. In *Gaskin v. Goldwasser* (1988), 166 Ill. App. 3d 996, 1011-12, 520 N.E.2d 1085, 1094, the court stated:

> "A battery is defined as the unauthorized touching of the person of another. To be liable for battery, the defendant must have done some affirmative act intended to cause an unpermitted contact. (*Mink v. University of Chicago* (N.D. Ill. 1978), 460 F. Supp. 713, 717.) ' "The gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff." ' *Mink*, 460 F. Supp. at 718, quoting W. Prosser, Law of Torts, §9, at 35 (4th ed. 1971)."

In *Mink v. University of Chicago* (N.D. Ill. 1978), 460 F. Supp. 713, women were given a drug as part of a medical experiment. A closer case on the facts is *Hennessy v. Commonwealth Edison Co.* (N.D. Ill. 1991), 764 F. Supp. 495, 507, where the court considered a battery action based on exposure to radiation at a nuclear power plant. Summary judgment for defendant was affirmed because plaintiff presented no evidence tending to show defendant *intended* plaintiff to suffer the contact. A similar result is appropriate in this case.

█ It is not alleged in the complaint that defendants had a duty to inspect and breached that duty. It is not alleged that defendants knew of the deteriorated condition of the insulation in and around the machinery. The "sample" report attached to the complaint as an exhibit is not alleged to be an air sample such that defendants would be aware of asbestos fibers floating or drifting in the air. It is not alleged that the maintenance of the machinery would, of necessity, cause the asbestos fibers in the insulation material to float or drift in the air or that the defendants were aware of that possibility. It is not alleged that defendants knew of the health risks of inhaling asbestos fibers,

although that may be inferred from the allegation that defendants decided not to have the asbestos removed before conducting the repairs. Plaintiffs allege they were exposed to a dust cloud which included asbestos. They do not allege the dust cloud existed before repairs were begun by plaintiffs or how defendants knew or should have known the dust contained asbestos fibers.

In the absence of allegations of such knowledge on the part of defendants, defendants could not have intended the contact. Nor could defendants have intended or known that there was a high probability that their conduct would cause severe emotional distress to plaintiffs.

■ In *McGrath v. Fahey* (1988), 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809, the tort of intentional infliction of emotional distress was defined as follows:

> "In Illinois the tort of intentional infliction of emotional distress was first recognized in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, in which a widow was permitted to maintain such an action against the murderer of her husband. It was not until 1976, however, that this court (relying on Restatement (Second) of Torts §46 (1965)) outlined the requirements for the tort.
>
> First, the conduct involved must be truly extreme and outrageous. Second, the actor must either *intend* that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause *severe* emotional distress. Third, the conduct must in fact cause severe emotional distress. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90.) 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity.' Restatement (Second) of Torts §46, comment *j*, at 77-78 (1965)." (Emphasis in original.)

The court in *McGrath* said that the tort does not arise from threats, insults, indignities, annoyances, or petty oppressions, but coercion, abuse of power or authority, and harassment. (*McGrath*, 126 Ill. 2d at 86-89, 533 N.E.2d at 809-11.) Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community. (*Kolegas*, 154 Ill. 2d at 21.) The tort of intentional infliction of emotional distress does not require a contemporaneous physical impact or injury. *Corgan v. Muehling* (1991), 143 Ill. 2d 296, 311, 574 N.E.2d 602, 609.

■ In this case, the counts attempting to allege the intentional infliction of emotional distress were properly dismissed. It is not al-

leged that defendants knew of the allegedly injurious condition. (At oral argument, the attorney for A.C. Equipment admitted that work was halted as soon as the presence of asbestos was discovered, but that fact was not alleged in the complaint.)

■ The tort of negligent infliction of emotional distress was also discussed in *Corgan* (143 Ill. 2d at 306, 574 N.E.2d at 606), where the court reiterated the elements of negligence as follows:

"This court has held:

'A complaint for negligence, to be legally sufficient, must set out facts that establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. [Citations.] The determination of whether a duty exists—whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff—is an issue of law to be determined by the court.' (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525.)

In determining whether to impose a duty upon a defendant, a court will look at various policy considerations, such as the likelihood of harm, the gravity of the injury, the burden of guarding against the injury, and the relationship between the parties. See *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 145."

In *Corgan*, the Illinois Supreme Court explained that the zone of danger test does not apply to direct victims (*Corgan*, 143 Ill. 2d at 306, 574 N.E.2d at 606) and rejected the requirement that, in order to recover for negligent infliction of emotional distress, there must be a physical manifestation of the emotional distress (*Corgan*, 143 Ill. 2d at 308-12, 574 N.E.2d at 607-09).

■ Here, the exposure to asbestos is alleged to have resulted in emotional distress on the part of plaintiffs. However, the failure to allege knowledge on the part of defendants of the possibility that plaintiffs could inhale asbestos dust also destroys the negligence counts since a duty to warn, stop the job, or provide protected clothing, *et cetera*, can only arise if defendants know of the danger, particularly in the absence of any allegations of a duty to inspect or otherwise ascertain the existence of a dangerous condition before causing plaintiffs to be exposed to the risk.

The remaining counts are for wilful and wanton misconduct on the part of defendants. For these counts to be sufficient, plaintiffs must have alleged a duty owed by defendants to plaintiffs and injury

proximately caused by a breach of that duty which was "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare" of plaintiffs by defendants. *Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518, 544 N.E.2d 733, 743; see also *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 187, 520 N.E.2d 62, 64.

> "Willful and wanton acts are those which, under the circumstances of the particular case, exhibit reckless disregard for the safety of others, including the failure to exercise ordinary care to prevent an impending danger. (*Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293; see also *Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518, 544 N.E.2d 733; *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015; *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.) To establish that a defendant was guilty of willful and wanton conduct, plaintiff must show that the defendant had actual or constructive knowledge that his conduct posed a high probability of serious physical harm to others. (*Albers v. Community Consolidated No. 204 School* (1987), 155 Ill. App. 3d 1083, 1085, 508 N.E.2d 1252.) The evidence must disclose that defendant was reckless, not merely careless, in his disregard of the danger created by the circumstances. (*Lynch*, 82 Ill. 2d 415, 412 N.E.2d 447.) Whether a defendant's acts amounted to willful and wanton conduct is a question to be resolved by the finder of fact, based upon the particular circumstances of each individual case. *Lynch*, 82 Ill. 2d 415, 412 N.E.2d 447; *Soucie v. Drago Amusements Co.* (1986), 145 Ill. App. 3d 348, 495 N.E.2d 997; *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 490 N.E.2d 77." *Downing v. United Auto Racing Association* (1991), 211 Ill. App. 3d 877, 884, 570 N.E.2d 828, 833.

In their brief, plaintiffs state the allegations in these wilful and wanton counts "mirror" the allegations of the negligent infliction of emotional distress counts, with the exception of the paragraph which alleges that the defendants' breach of duty to plaintiffs constituted an utter indifference to or conscious disregard for the health and safety of the plaintiffs. There is a qualitative difference between negligence and wilful and wanton misconduct. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 448-50, 593 N.E.2d 522, 530-31.) Plaintiffs may not merely reallege a negligence count and add a conclusory statement that the defendants' actions amounted to wilful and

wanton misconduct. Facts must be alleged in the complaint which support the allegations' willfulness and wantonness. See *Loftus v. Mingo* (1987), 158 Ill. App. 3d 733, 740, 511 N.E.2d 203, 207.

It is defendants' argument that the probability of harm to plaintiffs is unsupported by the allegations. We agree. Plaintiffs failed to allege sufficient facts which would support an action for wilful and wanton misconduct since, under these allegations, defendants could have been merely careless and not in disregard of a *known* danger.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

KNECHT and LUND, JJ., concur.