619 N.E.2d 1337 (1993)
250 Ill. App.3d 13
189 Ill.Dec. 288
ABBOTT-INTERFAST CORPORATION, Plaintiff-Appellant,
v.
Frank HARKABUS, Defendant-Appellee.
No. 2-92-1029.
Appellate Court of Illinois, Second District.
August 30, 1993.
*1339 James A. Calabrese, Wheeling, for Abbott-Interfast Corp.
Leahy, Eisenberg & Fraenkel, Ltd., Daniel J. Leahy, Leahy, Eisenberg & Fraenkel, Ltd., Chicago, for Frank Harkabus.
Justice DOYLE delivered the opinion of the court:
Plaintiff, Abbott-Interfast Corporation (Abbott), sued defendant, Frank Harkabus, a former employee, for violating a noncompetition agreement. The trial court granted Harkabus' motion for judgment on the pleadings on the ground that the noncompetition agreement was an unenforceable restraint on trade. In particular, the trial court found that the nonsolicitation clause in the agreement was overly broad because it contained no geographic limitations. The trial court refused to sever that provision from the remainder of the agreement. Abbott appeals.
According to Abbott's complaint and the supporting documentation, Abbott manufactured various types of fasteners. Abbott employed Harkabus as a salesman. In 1977, Abbott and Harkabus entered into an employment agreement (Agreement) which contained the following provisions relevant to this case:
"2. Agreement Not To Solicit. During the term of the Employee's employment with Employer and for a period of one (1) year after his employment with Employer shall terminate for any reason whatsoever, Employee shall not, except for and on behalf of Employer, and upon Employer's request, directly or indirectly on his own account, or as an employee, consultant, partner, joint venturer, owner, officer, director, or stockholder of any other person, firm, partnership, corporation, or other entity or in any other capacity, directly or indirectly, canvass, solicit, divert, take away, accept orders, or interfere with any of the business, customers, trade, or patronage of Employer, wherever located, as same may exist as of the of termination of Employee's employment, as aforesaid.
3. Maintenance of Trade Secrets and Confidential Information. Employee shall use his best efforts and the utmost diligence to guard and protect all trade secrets and confidential information of Employer. Employee shall not, either during or after the period of his employment by Employer, in whole or in part, use for himself or any other person, firm, partnership, corporation, association or entity, the identity of Employer's customers or customer lists, methods of operation, obtaining business, pricing, processes, techniques, systems, formulas, any information contained in the `customer history book' furnished by Employer to Employee, or other trade secrets or confidential information relating to Employer's business. In the event *1340 Employee's employment by Employer shall terminate for any reason whatsoever, he shall immediately return to Employer originals and any copies of all catalogs, price books, `customer history books', designs, drawings, estimates, quotations, customer lists, records and papers and all other matters or documents of whatever nature which bears Employer's secrets or confidential information, and which are in Employee's possession or in his control. Employee acknowledges and agrees that the memorization or mental retention by Employee of the aforesaid secret or confidential information shall be deemed to be a `taking' hereunder, and thus subject to the restrictions contained in this Agreement.
4. Remedies. * * *
* * * * * *
[T]o the extent any provision hereof is deemed unenforceable by virtue of its scope in terms of area or length of time, buy [sic] may be made enforceable by limitations thereon, Employee agrees that the same shall be enforceable to the fullest extent permissible under the law and public policies applied in such jurisdiction in which enforcement is sought.
* * * * * *
8. Severability. The invalidity, illegality, or unenforceability of any provision hereof shall not in any way affect, impair, invalidate or render unenforceable this Agreement or any other provision hereof."
On December 30, 1991, Harkabus voluntarily terminated his employment with Abbott.
Abbott's complaint alleged that Harkabus had breached the Agreement by (1) soliciting, accepting orders and interfering with Abbott's customers; (2) wrongfully utilizing Abbott's trade secrets; and (3) wrongfully making and retaining lists of Abbott's customers. Abbott further alleged that Harkabus wrongfully used Abbott's trade secret lists in order to obtain customers for himself in violation of the agreement as well as the Illinois Trade Secrets Act (765 ILCS 1065/1 et seq. (West 1992)). Abbott asked for damages as well as injunctive relief.
Harkabus moved for judgment on the pleadings under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1992)). According to Harkabus, paragraph 2 of the agreement was unenforceable because it lacked geographic limitations and would prevent him "from engaging in any business whether directly or indirectly which would compete with" Abbott. On July 13, 1992, the trial court granted, by letter, Harkabus' motion for judgment on the pleadings, subject to the preparation by Harkabus' counsel of a written order. On July 27, 1992, Abbott moved that the court sever any unenforceable provisions in the agreement from those which were enforceable and grant judgment only as to those provisions which were unenforceable. On July 31, 1992, the trial court entered an order, prepared by Harkabus' counsel, granting Harkabus' motion for judgment on the pleadings, finding that the entire agreement was "void as being against public policy in a restrain of trade [sic]." Abbott appeals this order.
The grant of a motion under section 2-615 is appropriate only where plaintiff's complaint is legally insufficient such that plaintiff can prove no set of facts that would entitle it to relief. (Campbell v. A. C. Equipment Services Corp. (1993), 242 Ill.App.3d 707, 711, 182 Ill.Dec. 876, 610 N.E.2d 745.) We must accept as true all well-pleaded facts in plaintiff's complaint and determine whether plaintiff has set forth a cause of action on which relief may be granted. Delgatto v. Brandon Associates, Ltd. (1989), 131 Ill.2d 183, 137 Ill.Dec. 36, 545 N.E.2d 689; Geise v. Phoenix Co. of Chicago, Inc. (1993), 246 Ill.App.3d 441, 445, 186 Ill.Dec. 122, 615 N.E.2d 1179.
"Enforceability of a restrictive covenant in an employment contract is dependent on whether, given the particular facts of the case, the restraints imposed thereby are reasonably necessary for the protection of the employer's business from unfair or improper competition." (Emphasis added.) (Arpac Corp. v. Murray *1341 (1992), 226 Ill.App.3d 65, 75, 168 Ill.Dec. 240, 589 N.E.2d 640; see also Label Printers v. Pflug (1991), 206 Ill.App.3d 483, 491, 151 Ill.Dec. 720, 564 N.E.2d 1382.) The reasonableness of a noncompetition agreement is measured by its hardship to the employee, its effect upon the general public, and the reasonableness of the time, territory, and activity restrictions. (Millard Maintenance Service Co. v. Bernero (1990), 207 Ill.App.3d 736, 750, 152 Ill.Dec. 692, 566 N.E.2d 379.) Courts uphold only those noncompetition agreements which protect the employer's legitimate proprietary interests and not those whose effect is to prevent competition per se. L S B Z Inc. v. Brokis (1992), 237 Ill.App.3d 415, 425, 177 Ill.Dec. 866, 603 N.E.2d 1240.
An employer ordinarily has no proprietary interest in its customers. (Reinhardt Printing Co. v. Feld (1986), 142 Ill.App.3d 9, 15, 96 Ill.Dec. 97, 490 N.E.2d 1302.) However, Illinois recognizes a protectable proprietary interest in "near permanent" customer relationships. (Agrimerica, Inc. v. Mathes (1988), 170 Ill. App.3d 1025, 1031-32, 120 Ill.Dec. 765, 524 N.E.2d 947.) Courts use the following factors to determine whether such a near permanent relationship exists:
"(1) the length of time required to develop the clientele; (2) the amount of money invested to acquire clients; (3) the degree of difficulty in acquiring clients; (4) the extent of personal customer contact by the employee; (5) the extent of the employer's knowledge of its clients; (6) the duration of the customers' association with the employer; and (7) the continuity of employer-customer relationships." (L SBZ, 237 Ill.App.3d at 426, 177 Ill.Dec. 866, 603 N.E.2d 1240.)
The employer must further show that, but for the employee's relationship with the employer, the employee would not have developed the contact with the customer. Reinhardt, 142 Ill.App.3d at 16, 96 Ill.Dec. 97, 490 N.E.2d 1302.
An employer can also claim a proprietary interest in its clients when its employee has obtained from the employer confidential information or trade secrets which the employee then uses for his or her personal benefit. Arpac, 226 Ill.App.3d at 73, 168 Ill.Dec. 240, 589 N.E.2d 640; Shapiro v. Regent Printing Co. (1990), 192 Ill. App.3d 1005, 1010, 140 Ill.Dec. 142, 549 N.E.2d 793.
The absence of a geographic limitation is not necessarily fatal to a noncompetition agreement. Courts have upheld restrictions which lack geographic limitations where the purpose of these restrictions "was to protect the employer from losing customers to a former employee who, by virtue of his prior relationship, gained special knowledge and familiarity with the customers' requirements." (Arpac, 226 Ill.App.3d at 77, 168 Ill.Dec. 240, 589 N.E.2d 640; see also PCx Corp. v. Ross (1988), 168 Ill.App.3d 1047, 1059, 119 Ill. Dec. 474, 522 N.E.2d 1333.) A restriction on the employee's ability to solicit clients is only enforceable when the restriction is "reasonably related to the employer's interest in protecting the customer relations that its employees developed as a direct result of the employment." McRand, Inc. v. van Beelen (1985), 138 Ill.App.3d 1045, 1057, 93 Ill.Dec. 471, 486 N.E.2d 1306.
A noncompetition agreement which restricts a specific activity, such as soliciting particular clients, is subject to a lower degree of scrutiny than an agreement which prohibits the employee from engaging in any type of competition with the employer. Arpac, 226 Ill.App.3d at 76, 168 Ill.Dec. 240, 589 N.E.2d 640; Dryvit System, Inc. v. Rushing (1985), 132 Ill.App.3d 9, 13, 87 Ill.Dec. 434, 477 N.E.2d 35.
The Arpac decision contains a helpful discussion of the factors a court uses to evaluate whether a restriction is reasonable. The court in Arpac evaluated the reasonableness of the following provisions in a noncompetition agreement:
"[defendant] expressly covenants and agrees that during the term of his employment by [plaintiff] and for a period of twenty-four (24) months immediately following the expiration or termination of such employment for any reason * * * he will not at any time for himself or on *1342 behalf of any other person, firm, partnership or corporation engage in the business (or any part thereof) of manufacturing, producing, marketing or selling shrink-packaging machinery in the United States (other than the states of Wyoming, Montana, Hawaii, and Alaska). Further, [defendant] expressly covenants and agrees that during the term of his employment by [plaintiff] and for a period of twenty-four (24) months immediately following the expiration or termination of such employment for any reason * * * he will not at any time induce, or attempt to induce, any customer of [plaintiff] to whom goods have been sold in the preceding five (5) years to refrain from purchasing the same or similar goods from [plaintiff] or to cancel or fail to renew any contract with [plaintiff]; or solicit the business of such customers directly or indirectly for his own account or for the account of any other person, firm, partnership or corporation; or induce, or attempt to induce, any employees, agents or sales personnel of [plaintiff] to terminate any relationship with [plaintiff]." Arpac, 226 Ill.App.3d at 69, 168 Ill.Dec. 240, 589 N.E.2d 640.
Defendant in Arpac had appealed the trial court's order enjoining him from violating the terms of the noncompetition agreement. After concluding that plaintiff had a protectable interest in its customers, the court upheld the trial court's injunction as to the portion of the agreement which prohibited defendant from soliciting plaintiff's customers. (Arpac, 226 Ill.App.3d at 76, 168 Ill.Dec. 240, 589 N.E.2d 640.) The court determined that, in light of the nature of the industry, that portion of the agreement was a reasonable attempt to protect plaintiff's relationship with its customers. (Arpac, 226 Ill.App.3d at 76, 168 Ill.Dec. 240, 589 N.E.2d 640.) The court held unenforceable, however, the portion of the agreement prohibiting defendant from engaging in any manner whatsoever in the shrink-wrap manufacturing business for two years. (Arpac, 226 Ill.App.3d at 79, 168 Ill.Dec. 240, 589 N.E.2d 640.) The court reasoned that (1) "the virtually unlimited geographic restraints on competitive activities and the further restriction from association with any company whose activities involve competition in the shrink-wrap industry [were] clearly beyond the need of [plaintiff] to protect its interest and [were] unduly harsh on [defendant];" and (2) plaintiff's "concern for the protection of its customers * * * [was] adequately addressed * * * by the nonsolicitation clause of [defendant's] agreement." Arpac, 226 Ill.App.3d at 79, 168 Ill.Dec. 240, 589 N.E.2d 640.
In Millard Maintenance, the court upheld a noncompetition agreement which prohibited the employee, either by himself or in association with a competing business, from soliciting, diverting, or taking away the employer's customers, for two years from the termination of the employee's employment. (Millard Maintenance, 207 Ill.App.3d at 741, 152 Ill.Dec. 692, 566 N.E.2d 379.) In Millard Maintenance, the employer presented evidence that it had established long-term relationships with its clients and that its employees became acquainted with those clients by virtue of their employment. (Millard Maintenance, 207 Ill.App.3d at 742-43, 152 Ill.Dec. 692, 566 N.E.2d 379.) In upholding the nonsolicitation agreement, the court reasoned that the agreement was reasonable because it left the employee free to solicit any client except those with whom the employer had established a relationship. Millard Maintenance, 207 Ill.App.3d at 750, 152 Ill.Dec. 692, 566 N.E.2d 379.
A noncompetition agreement, however, which prohibits an employee from soliciting any of the employer's clients is less likely to be upheld as a reasonable restraint on trade than a noncompetition agreement which prohibits an employee only from soliciting clients with which the employee has had contact while he or she was employed with the employer. See PCx Corp. v. Ross (1991), 209 Ill.App.3d 530, 538-39, 154 Ill.Dec. 311, 568 N.E.2d 311; McRand, 138 Ill.App.3d at 1058, 93 Ill.Dec. 471, 486 N.E.2d 1306.
We also point out that hardship to the public is one of the factors relevant *1343 to whether a restriction on trade is reasonable. Therefore, it is more difficult for an employer to justify prohibiting its former employees from accepting orders from the employer's clients than merely prohibiting its employee from soliciting such clients. Prohibiting a former employee from accepting orders or doing business with a customer places restrictions on that customer even though it is not a party to the noncompetition agreement. (See Millard Maintenance, 207 Ill.App.3d at 750, 152 Ill.Dec. 692, 566 N.E.2d 379.) However, such a restriction can be reasonable where there are a large number of other competitors with which the general public is free to do business. McRand, 138 Ill.App.3d at 1057, 93 Ill.Dec. 471, 486 N.E.2d 1306; see also Howard Johnson & Co. v. Feinstein (1993), 241 Ill.App.3d 828, 837, 182 Ill.Dec. 396, 609 N.E.2d 930.
We now turn to the facts of this case. Defendant argues that enforcing the Agreement would "restrict[] the Defendant from making a living in the same type of business." Defendant is correct that a restriction which would effectively prohibit him from "engaging in his occupation" would be an unreasonable restraint on trade. (See Lee/O'Keefe Insurance Agency, Inc. v. Ferega (1987), 163 Ill.App.3d 997, 1005, 114 Ill.Dec. 919, 516 N.E.2d 1313.) However, it is not clear from the face of the Agreement in this case that the restrictions at issue constitute such an unreasonable restraint on trade. Although courts closely scrutinize noncompetition agreements (Callahan v. Balfour (1989), 179 Ill.App.3d 372, 378, 128 Ill.Dec. 383, 534 N.E.2d 565), only in extreme cases will a court find such an agreement invalid on its face. (See Dryvit, 132 Ill.App.3d at 14, 87 Ill.Dec. 434, 477 N.E.2d 35 (agreement prohibiting employee from competing with employer in any manner with no geographic limitation clearly unreasonable).) The Agreement in this case provides that defendant may not "canvass, solicit, divert, take away, accept orders, or interfere with any of the business, customers, trade, or patronage of Employer, wherever located, as same may exist as of the date of termination of Employee's employment." It seems, therefore, that under the terms of the Agreement, defendant is free to solicit clients who are not associated with Abbott. It is impossible to ascertain, from the face of the agreement, the hardship that the enforcement of the Agreement will impose upon defendant. Without knowing anything about plaintiff's business, the type of client relationships that plaintiff maintains, or defendant's duties during his employment with plaintiff, we are not convinced that plaintiff could prove no set of facts which would entitle it to relief. The enforceability of the agreement will necessarily turn upon the particular facts and circumstances of the case. See Label Printers, 206 Ill.App.3d at 491, 151 Ill.Dec. 720, 564 N.E.2d 1382.
Having concluded that the trial court erred in granting judgment on the pleadings to defendant, we remand the cause to the trial court for a factual determination, in accordance with the principles we have discussed, as to whether the noncompetition agreement in this case is enforceable.
We next address certain issues that the parties have raised which are likely to arise on remand. First, Abbott argues that if the trial court correctly finds that certain portions of the Agreement are unenforceable, it should sever those provisions and enforce the remaining lawful provisions. Abbott points out that the Agreement contains a severability clause.
The trial court may, in its discretion, modify a contract so that it comports with the law or sever unenforceable provisions from a contract. (Arpac, 226 Ill.App.3d at 80, 168 Ill.Dec. 240, 589 N.E.2d 640; Corroon & Black of Illinois, Inc. v. Magner (1986), 145 Ill.App.3d 151, 166, 98 Ill.Dec. 663, 494 N.E.2d 785.) The existence of a severability clause in a contract certainly strengthens the case for the severance of unenforceable provisions because it indicates that the parties intended for the lawful portions of the contract to be enforced in the absence of the unlawful portions. (McRand, 138 Ill.App.3d at 1058, 93 Ill.Dec. 471, 486 N.E.2d 1306.) In certain circumstances, however, the unenforceability *1344 of one provision in a contract will render the entire contract void, even though the contract contains a severability clause. (Hill v. Names & Addresses, Inc. (1991), 212 Ill.App.3d 1065, 1089, 157 Ill. Dec. 66, 571 N.E.2d 1085.) In Hill, the court refused to apply a severability clause to salvage a provision in a noncompetition agreement where other provisions in that agreement were unenforceable and the agreement labeled those provisions "essential." The court reasoned that the language in the agreement labeling the unenforceable provisions "essential" conflicted with the severability clause. (Hill, 212 Ill. App.3d at 1089, 157 Ill.Dec. 66, 571 N.E.2d 1085.) The court further reasoned that the "essentiality" clauses took precedence over the severability clause because they were "principal and specific." Hill, 212 Ill. App.3d at 1089, 157 Ill.Dec. 66, 571 N.E.2d 1085.
In determining whether to modify the Agreement or to sever certain provisions while enforcing others, the trial court should consider the extent to which the provisions operate independently of each other. Because the parties in this case intended the provisions in the Agreement to be severable, the equities would seem to favor enforcing those provisions in the agreement which are valid unless they are so closely connected with unenforceable provisions that to do so would be tantamount to rewriting the Agreement. See Lee/O'Keefe, 163 Ill.App.3d at 1006-07, 114 Ill.Dec. 919, 516 N.E.2d 1313.
The fairness of the Agreement as originally written is also relevant to whether the trial court should modify the Agreement or sever the unenforceable provisions. House of Vision, Inc. v. Hiyane (1967), 37 Ill.2d 32, 39, 225 N.E.2d 21; Corroon & Black, 145 Ill.App.3d at 165-66, 98 Ill.Dec. 663, 494 N.E.2d 785; Dryvit, 132 Ill.App.3d at 14, 87 Ill.Dec. 434, 477 N.E.2d 35.
Harkabus argues, however, that even if the severability clause applies, paragraph 3 of the agreement, concerning trade secrets and confidential information, is invalid because it contains no time restrictions. A trade secret is "a plan or process, tool, mechanism, compound, or informational data utilized by a person in his business operations and known only to him and such limited other persons to whom it may be necessary to confide it." (ILG Industries, Inc. v. Scott (1971), 49 Ill.2d 88, 92, 273 N.E.2d 393.) Items such as customer lists, pricing information, and business techniques can be trade secrets if the employer has developed the information "over a number of years at great expense and kept [it] under tight security." (Reinhardt, 142 Ill.App.3d at 18, 96 Ill.Dec. 97, 490 N.E.2d 1302.) Whether a piece of information constitutes a trade secret depends on the facts of the particular case. See Label Printers, 206 Ill.App.3d at 494-95, 151 Ill.Dec. 720, 564 N.E.2d 1382; Reinhardt, 142 Ill.App.3d at 19-20, 96 Ill.Dec. 97, 490 N.E.2d 1302.
Section 8 of the Illinois Trade Secrets Act provides that "a contractual or other duty to maintain secrecy or limit use of a trade secret shall not be deemed to be void or unenforceable solely for lack of durational or geographical limitation on the duty." (765 ILCS 1065/8(b)(1) (West 1992).) Therefore, we cannot say that, as a matter of law, the contractual prohibition on the disclosure of trade secrets in this case is void because it contains no time limitation.
The judgment of the circuit court of Du Page County is reversed, and the cause is remanded for further proceedings in conformity with this disposition.
Reversed and remanded.
INGLIS, P.J and COLWELL, J., concur.