MELODY C. GEISE, Plaintiff-Appellant, v. PHOENIX COMPANY OF CHICAGO, INC., Defendant-Appellee (William Walthall, Defendant).

Second District    No. 2—92—0642

Opinion filed May 24, 1993.—Rehearing denied July 30, 1993.

442

DOYLE, J., concurring in part and dissenting in part.

Thomas F. Howard, Jr., of Bloomingdale, for appellant.

Paula S. Goldberg, of DiMonte & Lizak, of Park Ridge (Chester A. Lizak, of counsel), for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Melody C. Geise, brought this suit against her employer, the Phoenix Company of Chicago, Inc. (the company), and the company's national sales manager, William Walthall (the manager). The trial court dismissed the complaint counts against the company, with prejudice. It also found that there was no just reason to delay enforcement or appeal on that dismissal. (See 134 Ill. 2d R. 304(a).) The plaintiff brought this appeal from the court's dismissal of the company. We reverse.

In her complaint, the plaintiff alleged generally that on May 7, 1990, she was employed as an inside sales representative for the company. At all times relevant to the plaintiff's claims, the manager was the company's national sales manager. The plaintiff alleged that during the time she was employed the manager made numerous, specific, unsolicited and nonconsensual sexual advances toward her and that she made numerous reports of his conduct to her supervisors. Among other things, the plaintiff alleged the manager's unwanted physical advances, including attempts to kiss and touch her body, offensive placement of his hand on her body, and his placement of objects down the front of her blouse. According to the complaint, the company took no action on those reports until on or about January 21, 1991. Then, the company's president investigated and confirmed the plaintiff's allegations against the manager.

After verifying the plaintiff's allegations, and with knowledge of the manager's "previous propensity for sexual harassment," the complaint alleges, the company took no action against the manager. According to the complaint, the plaintiff's employment was terminated by the manager on or about May 1, 1991. The complaint asserts that the plaintiff's termination was in retaliation both for her failure to submit to the manager's sexual advances and for her attempts to inform the company about his actions.

Counts I and II of the complaint were made against the manager. They charged, respectively, battery and intentional infliction of emotional distress. Those counts are not involved in this appeal.

In count III of the amended complaint, the plaintiff claimed "negligent retention of employee." Therein, she alleged that the manager was employed (1) with primary supervisory duties; (2) to evaluate employees such as the plaintiff; and (3) to determine the professional advancement of numerous employees throughout the company. Count III further alleged that the plaintiff informed the company on numerous occasions of the manager's harassment and that on at least one occasion the company investigated and acknowledged that the claims were

accurate. Despite that acknowledgment, the complaint continues, the company failed to take "corrective action to remedy said harassment."

Count III asserts that in view of the relationship of authority and control conferred on the manager, the company owed its employees a duty "to protect them from harm to their persons, property and career advancement." The complaint charges that the company breached its duty of care to its employees when, after having factual knowledge and confirmation of the manager's sexual harassment toward the plaintiff, it failed to take remedial action and, thus, ratified the manager's actions.

Count III further alleged that prior to the manager's assault and harassment of the plaintiff the company knew, or should have known, that the manager was unfit for his job assignment. That assignment required him to work with and have authority over women. Count III concludes with a claim that the company was negligent, reckless, and grossly negligent in hiring the manager.

Count IV of the complaint is based on a theory of negligent hiring. It adopts all the complaint's preceding allegations and adds that when the company employed the manager, he had a history of sexual discrimination and harassment and had been dismissed from previous employment for reasons of sexual discrimination and harassment.

Count IV charges that the company owed the plaintiff a duty to investigate and that it breached its duty of care to the company employees by hiring the manager when it knew or should have known of his propensity for sexual harassment and discrimination. Count IV also charges that before it hired the manager, a reckless and grossly negligent act according to the complaint, the company knew or should have known that he was unfit for the manager position which required him to work with and have authority over women.

Count IV asserts that the manager's behavior toward female employees of his former employer was discoverable by reasonable inquiry to the manager's former employer. It also asserts that had the company known of that prior behavior, it would not have hired the manager. According to count IV, the company's acts and omissions (1) in failing to discover the manager's history and predisposition and (2) in retaining the manager were the direct and proximate cause of the plaintiff's injuries.

The plaintiff's complaint sought compensatory and exemplary damages, costs, and fees. The company brought a motion to dismiss under section 2–615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2–615). In that motion, the company argued that

the complaint failed to state a cause of action. The court's order granted dismissal with prejudice of counts III and IV. This appeal is taken from that dismissal order.

On appeal, the plaintiff argues that the trial court should have recognized an employer's duty to make a reasonable sexual harassment investigation into the employment history of a prospective manager. She also argues that the court erred in dismissing her negligent retention claim, because Illinois law has established an employer's duty to protect employees from sexual harassment propensities known to it.

The company's motion to dismiss under section 2—615 asserted (1) that there was no public policy requiring employers to check sexual harassment history of potential sales manager hirees; (2) that the plaintiff's claim that the company "should have known" of the manager's propensity for sexual harassment was not sufficient to state a cause of action for negligent hiring; and (3) that the plaintiff's allegations of negligent retention were not sufficient, as there was no allegation that the manager sexually harassed the plaintiff after the company investigated and ascertained that there was a basis for the plaintiff's complaints against him. The company also moved to strike the plaintiff's prayers for punitive damages and attorney fees, asserting merely that "that there is no factual basis alleged that would allow" either.

A motion under section 2—615 addresses defects on the face of the pleading; it admits all well-pleaded facts and attacks only the legal sufficiency of the complaint on its face. (*Aguilar v. Safeway Insurance Co.* (1991), 221 Ill. App. 3d 1095, 1100.) In reviewing a dismissal order, we must determine whether the complaint's allegations, when interpreted in a light most favorable to the plaintiff, are sufficient to set forth a cause of action on which relief may be granted. (221 Ill. App. 3d at 1101.) A cause of action should not be dismissed unless it clearly appears that no set of facts could be proved which would entitle the plaintiff to recover. 221 Ill. App. 3d at 1101.

■ Illinois courts have a long history of recognizing the availability of tort damages for an employer's negligent selection and employment of employees. In 1894, our supreme court observed that a "master" has a duty to exercise ordinary and reasonable care in the employment and selection of careful and skillful co-employees. (*Western Stone Co. v. Whalen* (1894), 151 Ill. 472, 484.) The court went on to state that ordinary care in the employment of "servants" requires a degree of diligence and caution proportionate to the exigencies of the particular service in question; the care required is what a reasona-

bly prudent person would exercise in view of the consequences that might reasonably be expected if an incompetent or reckless person was employed. 151 Ill. at 485.

In *Western Stone*, the plaintiff was awarded tort damages against his employer, based on jury findings that his injury was the result of negligence by his co-employee, a captain of a steam propeller who had been hired by the defendant company. The court observed that where the service in which one is to be employed may endanger "the life and persons" of co-workers, upon the plainest principles of justice and good faith, the employer should be required to make a reasonable investigation into the potential hiree's "character, skill and habits of life." (151 Ill. at 485.) The court further observed that courts had been practically unanimous that a master's failure to make such a reasonable investigation is negligence and that the master is held liable for a co-employee's injury resulting from the "negligence, incapacity or intemperance" of the negligently hired servant. (151 Ill. at 485.) Furthermore, the court suggested that the employer's actual knowledge of the offending employee's character and habit was not necessary to the employer's liability. 151 Ill. at 486-87.

The approach in *Western Stone* has also been followed in later cases. In *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, the defendant detective agency was held liable in tort to a female resident of the building for which the agency had hired a security guard. In the underlying incident, the security guard, unknown to the agency, had both a stained work history and a criminal arrest record. The guard used his passkey to enter the victim's apartment, where he assaulted her.

The *Easley* court referred to settled Illinois law that there is a cause of action against an employer's negligently hiring someone it knew, or should have known, was unfit for the job to be filled. (69 Ill. App. 3d at 931.) The court also found sufficient evidence to support a jury finding that the guard had been unfit for hiring, that a reasonably adequate investigation could have determined this fact, and that the agency's virtually nonexistent investigation both exhibited a reckless disregard for the plaintiff's safety and constituted the proximate cause of the plaintiff's injury. 69 Ill. App. 3d at 932.

In *Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 338, the plaintiff was a guest of a private party at the defendant's home. He alleged that the host had engaged an employee, whom the host knew had both a reputation for and propensities for violence, to act at the party as a bouncer and to maintain discipline with physical force. The court

found that the guest had a negligent hiring cause of action against the host, for injuries caused him by the employee.

In *Malorney v. B & L Motor Freight, Inc.* (1986), 146 Ill. App. 3d 265, the court considered a negligent hiring claim brought by a female hitchhiker who was picked up by the defendant company's truck driver and raped by him in his truck's sleeping compartment. The trial court denied summary judgment for the company, finding that the company had a duty to check the potential driver's criminal record before hiring him. The appellate court affirmed. It found that the company entrusting its driver with a truck that had a sleeping compartment clearly had a duty to hire a fit employee. (146 Ill. App. 3d at 268.) It also observed that a lack of forethought may exist where one remains in voluntary ignorance of facts concerning particular danger. 146 Ill. App. 3d at 268.

The *Malorney* court found no evidence to justify the company's contention that the cost of the suggested investigation of the potential employee was too high, compared with its potential utility. (146 Ill. App. 3d at 269.) It concluded, considering that the company probably knew or should have known of truck drivers' tendency to give rides to hitchhikers, that the record demonstrated a triable question of fact as to whether, by failing to investigate the potential driver's history as the plaintiff suggested, the company breached its duty to hire a competent driver. 146 Ill. App. 3d at 269.

In *Fallon v. Indian Trail School, Addison Township School District No. 4* (1986), 148 Ill. App. 3d 931, the court considered tort claims against the school officials who hired and supervised physical education teachers of the sixth-grade victim. The victim suffered spinal injuries in a school trampoline accident. The court followed reasoning consistent with the cases above, observing that liability for negligent hiring arises only when an employer knew or should have known that a particular unfitness of an applicant created a danger of harm to a third person. (148 Ill. App. 3d at 935.) The court affirmed the trial court's dismissal of the plaintiff's negligent hiring claim, finding that the plaintiff's mere allegation of failure to investigate the potential teachers' credentials, without any allegation that the employers knew or should have known of the applicants' particular unfitness that gave rise to a danger for third persons, was not legally sufficient. 148 Ill. App. 3d at 935.

In *Bates v. Doria* (1986), 150 Ill. App. 3d 1025, the plaintiff alleged negligent hiring of a sheriff's deputy who, during off-duty hours, assaulted her. Affirming summary judgment for the defendant employers, the court observed that where hiring created a danger of

harm to third persons, there was a cause of action for negligently hiring or retaining an employee who was known or who should have been known to be unfit for the job. (150 Ill. App. 3d at 1030-31.) In that case, however, it found no factual basis for finding that the plaintiff's injury was proximately caused by the allegedly negligent hiring. 150 Ill. App. 3d at 1032.

■ The declaration of a duty in a negligence case reflects the foreseeability of the harm, but emphasizes considerations of public policy and social requirements related to the magnitude of the burden of guarding against the harm and the consequences of placing that burden on the defendant; the determination of whether there exists a duty is inevitably the product of policy considerations related to which plaintiffs should be afforded protection by the tort law. (See *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1047-53.) Furthermore, an analysis of whether a duty exists is specific to the historical circumstances when it is made; duty is not a static concept, but one that changes with societal changes—a reflection of the needs, wishes, and tolerances of society as determined by the court facing a current duty issue. *Zimmermann*, 122 Ill. App. 3d at 1051.

According to the plaintiff's analysis, in the case now before us the matter critical to whether the company was entitled to an involuntary dismissal is whether the plaintiff properly alleged legal duties upon which recovery may lie. We first consider the plaintiff's count IV, based on negligent hiring. In supporting the legal viability of count IV, the plaintiff urges that we recognize a duty for this employer, who hired a male supervisor or manager to supervise women. That duty would apply, according to the plaintiff, to any employer hiring a person to supervise persons of the opposite sex; it would require prehiring inquiry into any such applicant's history of workplace sexual harassment of subordinates.

As background for our analysis of count IV, we survey the significant body of sexual harassment law. Federal statutory prohibitions of sexual harassment are found at section 703(a)(1) of title VII of the Federal Civil Rights Act of 1964, as amended (see 42 U.S.C. §2000e—2(a)(1) (1988)) and in section 703(a)(1)'s accompanying regulations (see 29 C.F.R. §1604.11 (1985)). These title VII regulations prohibiting sexual harassment in the workplace were first promulgated in the Equal Employment Opportunity Commission's 1980 "Guidelines on Discrimination Because of Sex." They received early judicial endorsement. See *Meritor Savings Bank, F S B v. Vinson* (1986), 477 U.S. 57, 65, 91 L. Ed. 2d 49, 58-59, 106 S. Ct. 2399, 2404-05.

In Illinois, the legislature has enacted numerous statutory prohibitions against sexual harassment. (See Ill. Rev. Stat. 1991, ch. 29, par. 17; ch. 68, par. 2—102(D); ch. 144, par. 189.21; see also Ill. Const. 1970, art. I, §18.) Furthermore, although Illinois courts have not directly addressed the question of the duty urged by the plaintiff, they have found the State's prohibition of sexual harassment to be a strong one.

In *Board of Directors, Green Hills Country Club v. Human Rights Comm'n* (1987), 162 Ill. App. 3d 216, 220, for example, the court found that under the Illinois Human Rights Act prohibition against sexual harassment in the workplace (see Ill. Rev. Stat. 1991, ch. 68, par. 2—102(D)) an employer is liable for sexual harassment of its employees by supervisory personnel regardless of whether the employer knew of the offending conduct. In another example, *Fitzgerald v. Pratt* (1992), 223 Ill. App. 3d 785, the court excepted allegations of intentionally inflicted or authorized sexual harassment from the generally exclusive remedy of workers' compensation. It allowed an employee alleging sexual harassment to sue her employer in tort, outside the workers' compensation system. 223 Ill. App. 3d at 789; see also *Byrd v. Richardson-Greenshields Securities, Inc.* (Fla. 1989), 552 So. 2d 1099; *Harman v. Moore's Quality Snack Foods, Inc.* (Tenn. Ct. App. 1991), 815 S.W.2d 519; *cf. Cremen v. Harrah's Marina Hotel Casino* (D.N.J. 1988), 680 F. Supp. 150.

■ We consider the Illinois tradition of tort liability for negligent hiring in the context of the legislatively created and judicially acknowledged State policy against sexual harassment. In that context, we find without question that in this State workplace sexual harassment is considered to present a serious harm. (See *Board of Directors*, 162 Ill. App. 3d at 220.) Based on that finding, and even though sexual harassment does not necessarily comprise the sort of physical injury present in the other negligent hiring cases that other Illinois courts have decided, we find no reason to distinguish the quality of harm presented by the sexual harassment alleged here, particularly as it involves physical violation, from the quality of harm threatened in those other cases where employers were subjected to tort liability for allegedly negligent hiring. See *Western Stone*, 151 Ill. at 485.

■ In this case, the plaintiff alleged that her manager was hired for a job that included extensive supervision of personnel not of his gender. We accept the truth of that well-pleaded fact allegation. We also refer to the Illinois Human Rights Act's underlying acknowledgment that sexually harassing conduct in the workplace must be guarded against and remedied. We then find that the legislatively ac-

knowledged harm of sexual harassment to the manager's supervisees was a foreseeable hazard of his employment.

Further, we find no basis to conclude that the burden to guard against the harm is of great magnitude for an employer such as the company here. To satisfy the burden in this case, the company might merely have needed to make slightly increased inquiry of the potential manager's former employer; some inquiry of former employers is a standard practice for hiring management personnel. It might also have inquired of the management applicant, in an interview or in a screening application question.

Given the serious harm that sexual harassment has been legislatively deemed to constitute, the foreseeable hazard of that harm's occurring upon hiring a new manager of a staff comprised primarily of persons not of the manager's gender, the plaintiff's allegation that the employer could have but failed to learn through investigation that the manager had a predisposition to and work history of sexual harassment of female co-workers, and the plaintiff's allegation of her proximate injury, including physical violations resulting from the employer's failure to act, we find that the plaintiff adequately pleaded a cause of action in tort. See *Zimmermann*, 122 Ill. App. 3d at 1052, *Easley*, 69 Ill. App. 3d at 932.

Our judgment falls short of a declaration of a specific duty to investigate and fully learn potential management employees' sexual harassment history and, thus, it is short of the duty declaration urged by the plaintiff. Rather, our conclusion is merely that the plaintiff's pleadings support her cause of action, considering the Illinois courts' long-held view that an employer has a duty to exercise ordinary and reasonable care in the employment and selection of careful and skillful co-employees (*Western Stone*, 151 Ill. at 484) and to discharge that duty with care commensurate with the perils and hazards likely to be encountered in the employee's performance of his job (*Western Stone*, 151 Ill. at 485).

With reference to the serious concern now afforded the issue of sexual harassment in the workplace, we find that the plaintiff sufficiently pleaded a cause of action based on whether the company negligently breached its duty of diligent and cautious hiring in consideration of co-workers. (See *Western Stone*, 151 Ill. at 485.) In our judgment, that duty can comprise a need to make the sort of investigation urged by the plaintiff here, and even with that inclusion, it imposes no inappropriate administrative or economic burden for employers. (See *Malorney*, 146 Ill. App. 3d at 269.) We also find that in being sufficiently broad to address the harm of sexual harassment,

that duty serves a prophylactic role in the interest of today's ethical or moral thinking and in the general interest of justice. See *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 1052.

The company's argument against the recognition of a duty here is largely based on the fact that no precisely analogous duty has been recognized in Illinois. We, however, do not find that argument persuasive. It is clear that the concept of duty is an ever-evolving one. (See *Zimmermann*, 122 Ill. App. 3d at 1051-53.) Furthermore, in our mere recognition that an employer can violate its duty of nonnegligent hiring by a failure to make a "reasonable examination" of management candidates' history of sexual harassment, we do not, contrary to the company's assertion, begin a slippery slope of judicial involvement in the quality and breadth of the investigation requirement; courts have long relied on the feasibility of a rule of "reasonableness." (See, *e.g., Malorney v. B & L Motor Freight, Inc.* (1986), 146 Ill. App. 3d 265, 269.) Lastly, we do not find, as the company suggests, that the propriety of our judicial recognition of a duty in this case is called into question by the absence of any specific, comparable legislative requirement.

In our conclusion here, we leave open the factual matter of whether the company violated its duty by its failure to act in this case. (See *Malorney*, 146 Ill. App. 3d at 269.) Additionally, we note, as does the plaintiff, that we do not effectively create a complete ban on the hiring of persons with a history of sexually harassing behavior for elevated employment roles. In the case that through prehiring investigation an employer learns of cause for caution concerning a potential employee's history suggesting sexual harassment, the employer merely would have been made aware of the need to emphasize the proper bounds of that individual's workplace conduct and to monitor the new employee's treatment of his co-workers. Such caution would seem to be in the employer's interest, given Illinois' recognition of a form of strict employer liability for supervising employees' acts of sexual harassment. See *Board of Directors*, 162 Ill. App. 3d at 220.

In conclusion, we find that taking all well-pleaded facts as true, and interpreting the plaintiff's count IV in a light most favorable to her (see *Aguilar v. Safeway Insurance Co.* (1991), 221 Ill. App. 3d 1095, 1100—01), the plaintiff adequately alleged facts which could entitle her to relief for her employer's negligent hiring, based on its failure to make a reasonable investigation in hiring the manager. Thus, we reverse the court's section 2—615 dismissal of the plaintiff's count IV.

■ Regarding the court's dismissal of the plaintiff's count III, the count based on the company's retention of the manager in his employment, the company argues that the plaintiff failed to state a cause of action for two reasons. First, the company refers to the plaintiff's acknowledgement in her brief that the harassment in this case ceased after the company's president investigated and confirmed the plaintiff's charges of sexually harassing behavior by the manager. Based on the absence of allegations that there was any sexual harassment after the company's investigation, the company asserts that the manager's discharge was not necessary. Secondly, the company asserts that the plaintiff's count III fails sufficiently to allege damages. According to the company, (1) the plaintiff has brought an action that rests on allegations of stress anxiety; (2) such torts require damage allegations setting forth severe emotional distress; and (3) the plaintiff's damage allegations do not rise to the required level of severe emotional distress.

We find, initially, that the company's arguments miss the crucial issues related to the plaintiff's count III claim, and we dispense with them with brief comment. Initially, we do not find that the plaintiff's complaint is rendered insufficient by her acknowledgment that the manager's sexual harassment ended after the company verified her complaints. The plaintiff's complaint alleges (1) that before the harassing conduct ended, she complained of it to the company and (2) that despite her claim that the company "knew or should [have] known" of the conduct, the company took no responsive action. The plaintiff has, thus, alleged claims based on the company's failure to act when on notice of its employee's sexual harassment of a co-worker.

Further, we are not persuaded by the company's argument regarding damages. Contrary to the company's assertion, the plaintiff does not merely allege that she proximately suffered "severe and emotional distress" in the form of "stress anxiety, loss of weight and sleep, and *** a profound loss of self esteem [*sic*] and depression." Count III also incorporates the plaintiff's allegation that she was terminated from her employment in retaliation for her response to sexual harassment at her workplace. The sufficiency of the plaintiff's emotional distress allegations is not determinative here. *Cf. Miller v. Equitable Life Assurance Society of the United States* (1989), 181 Ill. App. 3d 954.

Having disposed of the company's arguments, we proceed to our more basic consideration of whether the plaintiff has alleged facts upon which recovery may be had. (See Ill. Rev. Stat. 1991, ch. 110, par. 2–615; *Aguilar*, 221 Ill. App. 3d at 1100-01.) As with our analy-

sis of the plaintiff's count IV, our analysis of the legal viability of the plaintiff's count III is centered on whether the plaintiff has properly alleged a duty that is recognizable in tort law.

As we have noted in our preceding analysis, Illinois law has a clear prohibition against workplace sexual harassment. (See Ill. Rev. Stat. 1991, ch. 68, par. 2–102(D).) Furthermore, in Illinois an employer has been deemed responsible for sexual harassment of its employees by supervisory personnel, regardless of whether it knew of the conduct. (*Board of Directors, Green Hills County Club v. Human Rights Comm'n* (1987), 162 Ill. App. 3d 216, 220.) Also, just as it recognizes a cause of action for negligent hiring, Illinois law also recognizes a tort cause of action against an employer for negligently retaining in its employment an employee that the employer knew or should have known was unfit for the job so as to create a danger to third parties. *Bates v. Doria* (1986), 150 Ill. App. 3d 1025, 1030.

In her count III, the plaintiff alleged that she suffered proximate injury after she repeatedly informed the company of the manager's sexually harassing conduct towards her and that the company took no action. With reference to our preceding analysis on the serious nature of sexual harassment, and to Illinois' general recognition of a tort of negligent retention of an employee, we find that the plaintiff's count III adequately alleged a cause of action and should not have been dismissed.

Based on the foregoing, we reverse the judgment of the circuit court of Du Page County. We remand the cause for further proceedings on both counts III and IV, consistent with this opinion.

Reversed and remanded.

WOODWARD, J., concurs.

JUSTICE DOYLE, concurring in part and dissenting in part:

I concur in the majority's recognition of plaintiff's cause of action for negligent retention; however, I dissent from that portion of the opinion which allows plaintiff a cause of action for negligent hiring premised upon the failure to investigate for prior instances of sexual harassment based solely on the existence of a mixed-gender workplace.

I agree with the majority conclusion that plaintiff's allegations addressing defendant's failure to redress her complaints of sexual harassment were sufficient to state a cause of action for negligent retention. Negligent retention occurs " 'when, during the course of

employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigation, discharge or reassignment.' " (*Foster v. Loft* (1988), 26 Mass. App. Ct. 289, 291, 526 N.E.2d 1309, 1311, quoting *Garcia v. Duffy* (Fla. Dist. Ct. App. 1986), 492 So. 2d 435, 438-39.) Taking all well-pleaded allegations in plaintiff's complaint as true and viewing them in a light most favorable to plaintiff, as we must for the purposes of a section 2—615 motion to dismiss (see Ill. Rev. Stat. 1991, ch. 110, par. 2—615; *Aguilar v. Safeway Insurance Co.* (1991), 221 Ill. App. 3d 1095, 1100-01), I agree with the majority conclusion that plaintiff alleged a claim based on the company's failure to act after being placed on notice of an employee's sexual harassment of her.

Turning now to plaintiff's claim for negligent hiring, I must state at the outset that I consider the majority's attempt to fashion an additional means to redress the serious problem of workplace sexual harassment an excellent objective. I am concerned, however, with the creation of a rule of law that imposes on employers an affirmative duty to investigate all prospective managerial and supervisory employees for prior instances of sexual harassment based solely on the existence of a mixed-gender workplace. Although the majority states that the opinion falls short of declaring a specific duty to investigate potential management employees' sexual harassment history, I interpret the opinion as doing precisely that. Setting aside considerations of actual and proximate cause, as I read the majority opinion, an employer's mere failure to conduct a background investigation of prospective managerial or supervisory candidates concerning their propensities towards sexual harassment will result in a breach of that duty, thus subjecting the employer to liability. Carried to its logical extreme, I view the majority's creation of such a duty as opening the door to imposing on employers a multitude of affirmative duties to conduct background investigations to expose various character traits or propensities of prospective employees regardless of their contemplated position in the hierarchical structure and without consideration of the particular circumstances of the workplace or exigencies of the particular employment. It is foreseeable that complex issues of privacy would ultimately be implicated in such a process and that employers' efforts to respect the proper scope of preemployment inquiries, already limited by privacy concerns, would become even more difficult. For the reasons that follow, it is my opinion that (1) the existing body of negligent hiring cases does not support the creation of such a duty; (2) the absence in this State, and the express denuncia-

tion by other jurisdictions, of the imposition of a *per se* affirmative duty to inquire concerning prior instances of criminal conduct by prospective employees suggests that the imposition of an affirmative duty to investigate all prospective management employees for prior instances of sexual harassment is unwarranted; and (3) the focus of the analysis in such cases should be directed to the breach aspect of the tort rather than the creation of an affirmative duty to investigate.

As originally conceived, a common-law cause of action for negligent hiring/retention was devised as an exception to the common-law fellow-servant doctrine. The fellow-servant doctrine absolved an employer of liability to one engaged in his employment for injuries incurred because of the carelessness or misconduct of others also employed by that employer and who were engaged in the same general employment as the injured employee. (53 Am. Jur. 2d *Master & Servant* §295, at 327 (1970).) An exception to the fellow-servant rule was recognized, however, in cases where an employer was negligent in employing incompetent co-employees. (See, *e.g., Western Stone Co. v. Whalen* (1894), 151 Ill. 472, 484.) The result of this exception was not to impose a form of imputed liability on employers for the actions of their employees against fellow employees, but to recognize a direct cause of action by an injured employee against an employer for its failure to exercise reasonable care in the selection of careful and skilled co-employees (*Western Stone*, 151 Ill. at 485). As early as *Western Stone* and before, courts wrestled with the problem of what precisely was the exercise of reasonable care in such cases. See *Western Stone*, 151 Ill. at 484.

As the rule evolved in Illinois, and other jurisdictions (see *Ponticas v. K.M.S. Investments* (Minn. 1983), 331 N.W.2d 907, 910 (list of citations)), actions predicated on direct employer liability for failure to exercise reasonable care in the selection and retention of employees expanded the scope of the employer's duty to encompass not only injured co-employees but nonemployee third parties as well (see, *e.g., Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 931-32 (employee hired as security guard assaulted apartment tenant)). Although the present case involves alleged instances of assault and sexual harassment perpetrated by a manager against a subordinate level employee, I agree with the majority's implicit determination that the third-party cases are nevertheless instructive. See *Bates v. Doria* (1986), 150 Ill. App. 3d 1025; *Fallon v. Indian Trail School, Addison Township School District No. 4* (1986), 148 Ill. App. 3d 931; *Malorney v. B & L Motor Freight, Inc.* (1986), 146 Ill. App. 3d 265;

*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333; *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920.

The rule, as often articulated, in its present-day form states that a cause of action exists against an employer for negligently hiring, or retaining in his employment, an employee he knew, or should have known, was unfit for the job so as to create a danger of harm to third persons. (*Bates*, 150 Ill. App. 3d at 1030.) While I am in complete agreement with the imposition of the well-established duty which requires employers to exercise reasonable care in the selection and retention of employees, I consider it an unnecessary expansion of this principle to impose in all cases a specific duty on employers to inquire about past instances of sexual harassment by prospective management employees based solely on the circumstance that men and women will be working together. In reaching its determination to impose this affirmative duty, I believe that the majority either fails to acknowledge, or intentionally abrogates, a critical element of the existing negligent hiring cases. The majority essentially eliminates any consideration of the circumstances and particular type of employment that the prospective employee will be engaged in as a means of determining what constitutes the exercise of reasonable care. Although the majority identifies a supervisory or management role in a mixed-gender workplace as the particular circumstance by which its newly recognized duty to investigate is triggered, this is a circumstance which is by no means peculiar but, on the contrary, is common to the majority of workplaces in this country.

A common thread running through the negligent hiring cases cited by the majority is the existence of an inherent quality concerning the circumstances of the offending employee's occupation that places third parties at some heightened level of risk. For example, in *Western Stone* the offending employee was a steamship captain charged with the safe operation of a hazardous ship towing operation; in *Easley*, the offending employee was an armed security guard entrusted with a passkey to a number of apartments; in *Gregor*, the defendant employed a bouncer with an alleged vicious propensity for physical violence upon others to maintain order at a social gathering; in *Malorney*, the court interestingly found it significant that the offending employee was operating an over-the-road truck with a sleeping compartment which that court believed presented a special danger to female hitchhikers; in *Fallon*, the alleged offending employees were hired as physical education instructors teaching trampoline techniques to sixth-grade children; and in *Bates*, the offending employee was an off-duty sheriff's deputy. In each of these cases, where the court as-

signed significance to the necessity of conducting a background investigation into particular behavior, it was borne out of a consideration of the particular task to which the offending employee was assigned and the potential for heightened risk to others.

As our supreme court stated in *Western Stone*, the duty placed on employers to exercise "ordinary care in the employment of servants require[d] a degree of diligence and caution proportionate to the *exigencies of the particular service*." (Emphasis added.) (*Western Stone*, 151 Ill. at 485; accord *Focke v. United States* (D. Kan. 1982), 597 F. Supp. 1325, 1345-46; *Ponticas v. K.M.S. Investments* (Minn. 1983), 331 N.W.2d 907, 912-13; see generally Note, *The Responsibility of Employers for the Actions of Their Employees: The Negligent Hiring Theory of Liability*, 53 Chi.-Kent L. Rev. 717 (1977).) The court further declared that it is "such care as a reasonably prudent person would exercise, in view of the consequences that might reasonably be expected to result if an incompetent, careless or reckless servant was employed for the *particular duty*." (Emphasis added.) (*Western Stone*, 151 Ill. at 485.) What becomes apparent from the court's early pronouncement is that the extent of an employer's duty to exercise ordinary care in the selection of employees would be determined by the peculiarities of a particular occupation. As the court itself concluded, "[w]here *** a master employs a servant to engage in a business known to be hazardous, and where the proper and safe discharge of the duty requires a high degree of care, skill and diligence, the master will be held in the selection of the servant to the exercise of care reasonably commensurate with the perils and hazards likely to be encountered in the performance of the duty." *Western Stone*, 151 Ill. at 485.

I agree with the majority that there is no basis for distinguishing the quality of harm presented by the sexual harassment alleged by plaintiff from the quality of harm threatened in other cases in which tort liability for negligent hiring has been recognized. The majority opinion seems to be predicated, however, on the notion that anytime persons of the opposite sex are commingled in a work environment the risk of harm is so elevated that an employer must guard against the potential danger by investigating the backgrounds of all supervisory employees. Although I recognize that sexual harassment is all too prevalent and has the potential for infliction of serious harm, I am unwilling to take such a dismal overall view of the American workplace. The fact that serious abuses sometimes occur is not a reason to assume that danger lurks in every employment relationship to such an extent that it is reasonable to require employers to launch background investigations of all supervisory personnel before any hint of impropri-

ety is even suspected. To be perfectly clear, I am not suggesting that there would never be a circumstance where it would be reasonably prudent for an employer to investigate a prospective employee's background for prior instances of sexual harassment. My concern is that the majority has imposed on employers a blanket duty to investigate for prior instances of workplace sexual harassment for no reason other than the circumstance of mixed-gender workplace.

As analogous support for my position, I note that at least two other jurisdictions have expressly rejected the notion that there exists a duty upon an employer to make an inquiry as to a prospective employee's criminal record even where it is known that the employee is to deal regularly with members of the public. (See *Ponticas*, 331 N.W.2d at 913; *Evans v. Morsell* (1978), 284 Md. 160, 167, 395 A.2d 480, 484.) As noted by the court in *Ponticas*:

> "If the employer has made adequate inquiry or otherwise has a reasonably sufficient basis to conclude the employee is reliable and fit for the job, no affirmative duty rests on him to investigate the possibility that the applicant has a criminal record. *** Liability of an employer is not to be predicated solely on failure to investigate criminal history of an applicant, but rather, in the totality of the circumstances surrounding the hiring, whether the employer exercised reasonable care. This is generally a jury question." (*Ponticas*, 331 N.W.2d at 913.)

In light of the above jurisdictions' express rejection of any affirmative duty to inquire about a prospective employee's criminal background and the absence of any such duty in Illinois, it seems to follow that liability here should not be predicated solely on the failure to investigate for prior instances of sexual harassment; rather, the focus should be on the totality of the circumstances and whether the employer exercised reasonable care in light thereof. Moreover, considering the competing burdens and important public policy concerns that are implicated by the imposition of such an affirmative duty, I further question whether such a determination is better left to the legislature.

In my view, existing negligent hiring precedent, and a recognition of the already existing duty to exercise reasonable care in the selection and retention of employees based upon the totality of the circumstances and the particular exigencies of an individual's employment, already provide plaintiffs with a suitable recourse in these cases. The inquiry here should not be whether, as plaintiff urges and the majority agrees, to impose on employers a duty to investigate all prospective managerial employees for prior instances of sexual harassment where that prospect will be employed in a mixed-gender workplace; rather,

the inquiry should be whether plaintiff has alleged facts sufficient to establish that defendant breached its duty to exercise reasonable care in the selection of management employees. By focusing the analysis on the breach aspect of the tort, existing precedent is left undisturbed, it becomes unnecessary to fashion a specific duty to investigate in all cases for prior instances of sexual harassment, and it allows the trier of fact to consider more fully the totality of the circumstances surrounding the nature of the employment and an employer's hiring practices.

In determining the necessity and scope of a background investigation, the type of work to be performed should be considered (*Garcia*, 492 So. 2d at 441), and, if it is concluded that such an investigation is required, its scope should be directly related to the severity of risk third parties are subjected to by an incompetent employee (*Ponticas*, 331 N.W.2d at 913).

I further suggest that when analyzing whether an employer is required to conduct an investigation into specific instances of prior conduct, the inquiry should consider such factors as whether the employer at the time of hiring had actual or constructive knowledge of an employee's unfitness and whether the exigencies of the particular employment presented a heightened risk of harm to third parties, thus necessitating an investigation.

Applying the foregoing to the circumstances of the present case, it is my conclusion that plaintiff failed to allege facts sufficient to establish a breach of the duty to exercise reasonable care in hiring. Plaintiff alleged that defendant owed a "duty to Plaintiff to investigate and breached its duty of care to its employees by hiring an employee in the person of Defendant Walthall when Defendant Phoenix knew, or should have known of his propensity for sexual harassment and discrimination." Plaintiff further alleged Walthall's behavior was "discoverable *** through reasonable inquiry."

Notwithstanding plaintiff's conclusional allegation that defendant knew, or should have known, of Walthall's prior instances of sexual harassment, reading the complaint as a whole, I find no well-pleaded factual allegations sufficient to establish that defendant had notice, either actual or constructive, of Walthall's alleged prior instances of sexual harassment at the time of hiring. Additionally, plaintiff pleads no facts to establish that the exigencies and circumstances surrounding Walthall's employment were such as to place defendant on notice that a background inquiry into prior instances of sexual harassment was necessary. Accordingly, I would affirm the circuit court's dismissal of count IV of plaintiff's first amended complaint.