Christine E. ERNST, Plaintiff,

v.

**PARKSHORE CLUB APARTMENTS LIMITED PARTNERSHIP, a Michigan partnership; Wacker/Randolph Corporation,[1] a Michigan corporation; Amurcon Development Corporation, a Michigan corporation; Omnibus/Harbor Realty Group, Inc., an Illinois corporation; and Golub & Co.,[2] an Illinois corporation, Defendants.**

No. 93 C 1207.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 24, 1994.

---

1. Wacker/Randolph Corporation was formerly known as Amurcon Development Corporation of Chicago.

2. Golub & Co. has been dismissed and is no longer a defendant in this case.

Michael T. Hannafan, William E. Blais, Michael T. Hannafan & Assoc., Ltd., Chicago, IL, for plaintiff.

Thaddeus J. Gustafson, Paul Kralovec, Michael Parker, Law Office of Shelmerdeane A. Miller, Chicago, IL, for The Parkshore Ltd., Wacker/Randolph Corp., Amurcon Corporation, Omnibus/Harbor Realty Group, Inc.

Eric L. Samore, Ellen Seavey Martin, Ellen E. Gibson, John Leo Showel, Quarrey & Harrow, Ltd., Chicago, IL, for Golub & Co.

### MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

The ParkShore is a luxury high-rise apartment building located in Chicago, Illinois. Plaintiff Christine Ernst, a citizen of the state of Florida, signed a one-year lease agreement for a furnished, one-bedroom unit in The ParkShore on June 20, 1991. During the morning of February 5, 1992, Ernst Zarate, a maintenance employee at The Park Shore, unlocked Ernst's unit with a passkey and entered Ernst's apartment. Ernst was showering when Zarate surprised her, parting the shower curtain and slashing at her with a six-inch diver's knife. Ernst struggled with Zarate, and he cut her knee. Zarate then fled from the apartment. Zarate was arrested that day, and on January 8, 1993, he was convicted of home invasion, armed violence and aggravated battery.

After Zarate attacked Ernst, it was discovered that Zarate had been arrested on numerous occasions and had once pleaded guilty to unlawful use of weapons, for which he was sentenced to and did complete one year of supervision. Ernst then filed this suit for negligent hiring/supervision, negligent security and breach of lease. None of the defendants named in the complaint were aware of Zarate's criminal history at the time he was hired. The relationships between the defendants are as follow.

Parkshore Club Apartments Limited Partnership was the beneficiary of the Illinois land trust that owned The ParkShore. Amurcon Development Corporation was the real estate developer of The ParkShore. Parkshore Club contracted with Amurcon Development Corporation of Chicago for the management of The ParkShore on June 1, 1991. Amurcon and Amurcon of Chicago are two separate corporations. Amurcon of Chicago subsequently contracted with Omnibus/Harbor Realty for the co-management of The ParkShore. Omnibus employed Tracy Braun, the property manager of The ParkShore, and Joe Cacic, the chief engineer of The ParkShore. Braun, acting on behalf of Omnibus, hired Ramon Zarate as a part-time maintenance person at The ParkShore on July 18, 1991, after Cacic recommended him. Prior to their employment with Omnibus, Braun, Cacic and Zarate were employed at Presidential Towers. Zarate was soon promoted to a full-time maintenance position in October 1991.

The defendants now move for summary judgment on liability for negligence.

## I. STANDARD OF REVIEW

 Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists if no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

(1986). Summary judgment also must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Tatalovich v. City of Superior,* 904 F.2d 1135, 1139 (7th Cir.1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). But the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

## II. NEGLIGENT HIRING/SUPERVISION

 To recover under any negligence theory, a plaintiff must establish that: (1) the defendants owed a duty of care to the plaintiff; (2) the defendants breached that duty; and (3) the breach proximate caused the plaintiff's alleged injury. *Cunis v. Brennan,* 56 Ill.2d 372, 308 N.E.2d 617 (1974). Whether defendants owed a duty of care is a question of law to be decided by the court. *Mieher v. Brown,* 54 Ill.2d 539, 301 N.E.2d 307, 308 (1973).

Defendants assert that neither Parkshore nor Amurcon owed any duty of care to Ernst. Although neither Parkshore nor Amurcon had any direct relationship with Ernst so that the law would impose a duty of care, the plaintiff here attempts to hold Parkshore Club and Amurcon vicariously liable for the negligence of Amurcon of Chicago and Omnibus in the management of The ParkShore. Therefore, the question with respect to Parkshore Club and Amurcon is whether vicarious liability lies under the facts of this case.

 Illinois law does not hold employers liable for the negligence of independent contractors except where the employer orders or directs the acts which cause the alleged harm. *Spivey v. Brown,* 150 Ill.App.3d 139, 103 Ill.Dec. 876, 878, 502 N.E.2d 23, 25 (1986); *Milz v. M.J. Meadows, Inc.,* 234 Ill. App.3d 281, 175 Ill.Dec. 276, 281, 599 N.E.2d 1290, 1295 (1992). The undisputed facts indicate that Parkshore Club contracted with Amurcon of Chicago for the management of the building and that the management agree-

ment explicitly designates Amurcon of Chicago as an independent contractor. Amurcon then contracted with Omnibus for co-management of the building. "If the parties to the relationship are bound by a contract which by its terms clearly defines that relationship as that of employer/independent contractor and the parties abide by that contract, then the contract may be conclusive of their relationship." *Manahan v. Daily News Tribune,* 50 Ill.App.3d 9, 8 Ill.Dec. 659, 665, 365 N.E.2d 1045, 1051 (1977). Amurcon of Chicago abided by the contract, conducting itself as an independent contractor. Significantly, Amurcon of Chicago maintained the right to control the details, as evidenced by their exclusive control over the hiring and firing and employees. That is to say, Amurcon of Chicago was free to achieve the end of managing the building without its methods being controlled by its "employer." Consequently, neither Parkshore nor Amurcon can be held liable for the negligence of its independent contractors, Amurcon of Chicago and Omnibus.

Nevertheless, plaintiff seeks to hold Amurcon liable directly for its own negligence in its management of The Parkshore. Amurcon was the real estate developer of The ParkShore and, prior to July 10, 1992, did not manage the building; Amurcon of Chicago co-managed the building with Omnibus. The only evidence plaintiff adduces that suggests Amurcon managed the building is a Chicago Tribune advertisement that identifies "Amurcon Development Corp." as the manager of the building with Omnibus. This is not enough to create a genuine issue of material fact. Mitchell Meisner's affidavit and the remainder of the record clarifies that the advertisement referred to Amurcon of Chicago and that Amurcon never attempted to hire or supervise any employees for the management, nor performed any of the duties of managing the premises prior to July 10, 1992. Given these undisputed facts, no reasonable jury could find that Amurcon managed the building, much less hold Amurcon liable for its negligence in management.

Finally, although the parties refrain from using terms such as "piercing the corporate veil," it is clear from plaintiff's arguments that she seeks to hold Amurcon liable as a sister corporation of Amurcon of Chicago. Courts are generally reluctant to pierce the corporate veil. *Pederson v. Paragon Pool Enters.,* 214 Ill.App.3d 815, 158 Ill.Dec. 371, 373, 574 N.E.2d 165, 167 (1991). "A party seeking to have a corporate identity disregarded must come forward with a substantial showing that one corporation is really a dummy or sham for another." *Id.* (affirming summary judgment where plaintiff had not come forward with any evidence that the two corporations mixed corporate assets or that one was a sham for the benefit of the other). The plaintiff here has not come forward with any evidence, much less a substantial showing, that Amurcon of Chicago is a sham corporation set up for the benefit of Amurcon. Therefore, there is no basis for ignoring the separate corporate identity of Amurcon of Chicago.

The question then remains whether Amurcon of Chicago and Omnibus can be held liable for negligence in the management of The ParkShore. In Illinois, employers are directly liable for negligent hiring and retention and, thus, have a duty to refrain from hiring or retaining an employee who is a threat to third persons to whom the employee is exposed. *Bates v. Doria,* 150 Ill.App.3d 1025, 104 Ill.Dec. 191, 195, 502 N.E.2d 454, 458 (1986). Ernst claims Amurcon of Chicago and Omnibus breached that duty when they failed to investigate Zarate's arrest record. Ernst essentially seeks to impose on Amurcon of Chicago and Omnibus a duty to investigate an employee's arrest record.

The existence of a duty is not solely dependent upon foreseeability, and a court should also take into account policy considerations. *Zimmerman v. Netemeyer,* 122 Ill.App.3d 1042, 78 Ill.Dec. 383, 389, 462 N.E.2d 502, 508 (1984). This Court finds that defendants, as a matter of law, did not owe Ernst a duty to investigate Zarate's arrest record before hiring him to do maintenance work at The ParkShore. At least one Illinois Appellate Court has recognized that there is no affirmative duty in Illinois (or Minnesota or Maryland) to investigate a prospective employee's criminal background.

*Geise v. Phoenix Co. of Chicago, Inc.*, 246 Ill.App.3d 441, 186 Ill.Dec. 122, 133, 615 N.E.2d 1179, 1190 (1993) (no duty to inquire into prospective employee's background for prior instances of sexual harassment). Rather, the duty imposed is the exercise of reasonable care in the selection and retention of employees.

 In fact, the Illinois Human Rights Act makes inquiring into a job applicant's arrests a civil rights violation, except where such inquiry relates to bona fide occupational qualifications. 775 ILCS 5/2–103, 5/2–104. Plaintiff likens Zarate's position of employment to that of the security guard in *Easley v. Apollo Detective Agency, Inc.*, 69 Ill. App.3d 920, 26 Ill.Dec. 313, 387 N.E.2d 1241 (1979), and urges this court to hold that an inquiry into a potential maintenance person's arrest record relates to bona fide occupational qualifications because maintenance persons are issued a passkey to enter the apartments. Illinois courts have yet to define "bona fide occupational qualifications." The bona fide occupational qualification exception, however, must be construed very narrowly. *Dothard v. Rawlinson*, 433 U.S. 321, 330, 97 S.Ct. 2720, 2727, 53 L.Ed.2d 786 (1977). And, this Court finds some critical distinctions between Zarate's position as a maintenance employee and that of the employee in *Easley*. The employee in *Easley* was hired to be an armed security guard and was licensed by both the city and the state. Zarate was neither armed nor hired for security purposes. Zarate's arrest record would tell an employer nothing regarding his ability to perform maintenance work. I believe such an inquiry under the circumstances would operate against Illinois's public policy of promoting the rehabilitation of former criminal offenders. *See* 730 ILCS 5/3–12–1 (Corrections Employment Program).

Additionally, it would be a violation of the Illinois Uniform Conviction Information Act to make public Zarate's plea of guilty and supervised release. Although the Act permits, pursuant to certain procedures, the publication of conviction information maintained by the Illinois Department of State Police, orders of supervision are not deemed conviction information under the Act. 20 ILCS 2635/1—2635/24.[3]

 Even assuming a separate duty to investigate arrest records exists, I find that the element of proximate cause, which must be pleaded and proved in any cause of action in tort for negligence including negligent hiring and retention, is missing. Liability for negligent hiring and retention attaches only when there is "demonstrated a connection between the plaintiff's injuries and the fact of employment." *Bates*, 104 Ill.Dec. at 196, 502 N.E.2d at 459. The general rule is that a criminal act is an intervening, superseding cause of a plaintiff's injury and relieves the originally negligent defendant of liability, except where the defendant's acts or omissions create a condition conducive to a reasonably foreseeable intervening criminal act. *Rowe v. State Bank of*

---

**3.** *In respect to this issue, I am following law, not policy.* On several occasions, as a member of the Illinois Criminal Justice Information Authority and otherwise, I advocated the position of public disclosure of all criminal histories. It was and is my view that there are no secret arrests in America, and no secret convictions. And, in fact, if someone had enough money to examine the millions of courthouse records, they could learn anyone's criminal history. Our national policy, however, has been to split the baby. The actual records are quite public, but we make it prohibitively expensive to gain access to them by keeping secret the computerized criminal history sheets maintained by many police departments. This case would represent a good argument for changing our policies as to secrecy except for the fact that this criminal history would not have led a reasonable person to believe that Zarate would have committed the type of offense he perpetrat- ed against Ernst. Indeed, after my tenure on the Authority, the General Assembly passed and the Governor signed (with amendments later accepted) the Illinois Uniform Conviction Information Act. *See* William I. Gould, *New Help on Background Checks*, Chicago Tribune, July 2, 1988, § 1, at 10. The Act became effective in 1991 and allows the public to learn about convictions for felonies and serious misdemeanors. In practice, the law is not as effective as it ought to be because criminal history records are not as complete and accurate as they ought to be. And, other laws restrict an employer's use of conviction information to convictions of relevance to bona fide occupational qualifications (a sound idea) without defining clearly when convictions are related to one's suitability for employment (a not very sound idea). 775 ILCS 5/2–103, 5/2–104.

*Lombard,* 125 Ill.2d 203, 126 Ill.Dec. 519, 529, 531 N.E.2d 1358, 1368 (1988).

In the case at bar, Zarate's attack upon Ernst was not reasonably foreseeable. The phrase "reasonably foreseeable" means more than the mere possibility of the injury occurring, it means that the incident must have been foreseeable by a reasonable person. *See Morgan v. Dalton Management Co.,* 117 Ill.App.3d 815, 73 Ill.Dec. 313, 316, 454 N.E.2d 57, 60 (1983). One ordinarily may presume that others will conduct themselves in a law-abiding manner. The defendants here knew of no reason to presume otherwise. Zarate had an acceptable employment record with no complaints. Zarate had been employed as a maintenance person at The ParkShore for approximately six months prior to the attack on Ernst. There had been no problems whatsoever with him, not a complaint about him. Both Braun and Cacic had worked with Zarate at Presidential Towers some time before and, again, there had been no problems and no complaints.

Even if defendants had known of Zarate's arrest record, his arrest record does not make the incident any more foreseeable. The weapons charge to which Zarate pled guilty occurred three years prior to his employment with Omnibus. Illinois law does not require an employer to be "insurer of the safety of every person who happens to come into contact with his employee simply because of his status as an employee." *Bates,* 104 Ill.Dec. at 196, 502 N.E.2d at 459. Given Zarate's prior work performance, a reasonable jury could conclude only that Zarate's criminal act was not reasonably foreseeable and, consequently, was an intervening and superseding cause of plaintiff's injury. Or, in other words, a reasonable jury could conclude, from the totality of the circumstances, only that Amurcon of Chicago and Omnibus exercised reasonable care in the selection and retention of Zarate.

Accordingly, summary judgment is granted in favor of defendants with respect to Counts I and II of plaintiff's amended complaint.

### III. NEGLIGENT SECURITY

Plaintiff alleges in Count III of her amended complaint that defendants were negligent in providing security. Specifically, she states that defendants were negligent in giving Zarate access to her apartment because they "knew or should have known" that her apartment "was not secure from Zarate." Illinois law holds a landlord liable for the criminal acts of third parties where the landlord voluntarily undertakes to provide security measures, but performs the undertaking negligently and the negligence proximately causes plaintiff's injury. *Rowe,* 126 Ill.Dec. at 526, 531 N.E.2d at 1365. Plaintiff has presented no evidence that suggests defendants were negligent with respect to the security measures provided. Rather, as the allegations in this count reveal, plaintiff's complaint is that defendants were negligent in hiring and retaining Zarate as a maintenance worker; that was the subject of the summary judgment motion on Counts I and II. Summary judgment, therefore, is granted in favor of defendants with respect to Count III.

### IV. BREACH OF LEASE

Plaintiff alleges in Count IV of her amended complaint that defendants breached the terms of her lease because Zarate unreasonably entered her apartment. The lease states, in pertinent part, that "Lessee shall allow Lessor and his agents access to the apartment at reasonable times for reasonable purposes as provided by statute or ordinance." Nothing in the lease, however, imposes on defendants a similar duty to permit only reasonable access to her apartment. Absent a contract or a voluntary undertaking by the defendants, this Court may not impose the equivalent of a duty to maintain security. *See Rowe,* 531 N.E.2d at 1365. Even if defendants had assumed a duty to permit only reasonable access to Ernst's apartment, defendants cannot be held liable for breach of that duty. No reasonable jury could conclude that Zarate's acts were committed "during the course of employment and in furtherance of the business of the employer"; Zarate's act was committed solely for his "benefit." *See Management Ass'n of Ill.,*

*Inc. v. Board of Regents of N. Ill. Univ.,* 248 Ill.App.3d 599, 188 Ill.Dec. 124, 136, 618 N.E.2d 694, 706 (1993) (citing *Bremen State Bank v. Hartford Accident & Indem. Co.,* 427 F.2d 425, 428 (7th Cir.1970)) (private sector employer liable for employee's criminal act if committed during course of employment and in furtherance of employer's business). Consequently, summary judgment is granted in favor of defendants with respect to Count IV.

## V. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of defendants with respect to Counts I, II, III and IV of plaintiff's amended complaint.